S94A0781, S94A0783, S94A0784, S94A0830. LOVE v. WHIRLPOOL
CORPORATION et al. (four cases).
(449 SE2d 602)

HUNSTEIN, Justice.

On January 21, 1990 a fire occurred in the home of Terry and Prima Love. Terry Love sustained injuries. Prima Love, together with the couple's two sons and Prima's son by an earlier marriage, died. Love, individually and in his capacities as survivor and as legal representative of the estates of his wife and his two sons, filed four actions in superior court in February 1991, seeking to recover for his injuries and for the wrongful deaths of his family and for their respective pain and suffering.[1] Love alleged the fire was caused either by a defective electric clothes dryer (manufactured by Whirlpool Corporation, hereinafter "Whirlpool") or by a defect in the power cord which connected it to the electrical outlet or both. The power cord was manufactured by International Telephone & Telegraph Corporation (hereinafter "ITT"). The dryer and power cord were purchased in a used condition from Castleberry's Appliance Sales & Service (hereinafter "Castleberry's") on July 29, 1981.[2] In addition to Whirlpool, Love named two other defendants who were subsequently determined to have been incorrectly identified and were dismissed. In July 1991, Love filed four additional actions in superior court against ITT and Castleberry's. Love voluntarily dismissed the February 1991 actions against Whirlpool in June 1992 and then dismissed the July 1991 actions against ITT and Castleberry's in October 1992. Pursuant to the refiling provisions of the renewal statute, OCGA § 9-2-61 (a), Love filed the instant actions against Whirlpool, ITT and Castleberry's on December 17, 1992, more than ten years after the stipulated sale date of the used dryer and cord. Appellee Whirlpool filed a motion for summary judgment based on four grounds, the only one applicable to

---

[1] Michael Morrison, Sr. filed separate actions on behalf of his son, Terry Love's stepson.

[2] The parties acknowledge that the date of the first sale of the dryer and cord, in a new condition, is unknown; for purposes of these actions the parties have stipulated that the relevant sale date is July 29, 1981. Because of this stipulation, this opinion should not be construed as intimating that the ten-year statute of repose begins to run at any point later than the "date of first sale" as that phrase has been construed in *Pafford v. Biomet*, 264 Ga. 540 (448 SE2d 347) (1994).

this appeal being that the action was barred by the statute of repose, OCGA § 51-1-11. ITT also moved for summary judgment on that ground.[3] In response, Love moved the court to declare OCGA § 51-1-11 unconstitutional. In an order made applicable to all four cases, the trial court upheld the constitutionality of OCGA § 51-1-11 and ruled that the statute barred Love's actions notwithstanding the provisions of the renewal statute. See *Wright v. Robinson*, 262 Ga. 844 (426 SE2d 870) (1993); *Siler v. Block*, 263 Ga. 257 (1) (429 SE2d 523) (1993). This opinion consolidates the appeals made by Love from the trial court's order.

Appellant asserts that the trial court erred in upholding the constitutionality of OCGA § 51-1-11 and therefore granting summary judgment to appellees.

1. OCGA § 51-1-11 (b) (2) bars, without exception, the commencement of strict products liability actions "after ten years from the date of the first sale for use or consumption of the personal property causing . . . the injury." Subsection (c) extends the provisions of subsection (b) (2) to negligence products liability actions, except those in which it is alleged that the manufacturer's negligence resulted in a product causing disease or birth defect or that the injuries or damages suffered were the result of the manufacturer's conduct manifesting a "willful, reckless, or wanton disregard for life or property."

The question of the constitutionality of OCGA § 51-1-11 is one of first impression in this Court. We have previously sustained other statutes of repose against constitutional challenges,[4] and the Eleventh Circuit summarily held meritless a due process and equal protection challenge to OCGA § 51-1-11 (b) (2) in *Hatcher v. Allied Products Corp.*, 796 F2d 1427 (11th Cir. 1986). Inasmuch as Love is not a member of a suspect class requiring heightened scrutiny, we apply the "rational basis" test to analyze OCGA § 51-1-11. Accordingly, if it is shown that under any conceivable set of facts the classifications created by the statute bear a reasonable relationship to legitimate, constitutional governmental objectives, then the statute will be upheld. *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657 (437 SE2d 308) (1993).

---

[3] Although Castleberry's also filed a motion for summary judgment, the record does not contain an order thereon and Castleberry's is not a party to these appeals.

[4] See *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657 (437 SE2d 308) (1993) (upholding five-year statute of repose for medical malpractice actions); *Nelms v. Ga. Manor Condo. Assn.*, 253 Ga. 410 (321 SE2d 330) (1984) (upholding OCGA § 9-3-51, the statute of repose for actions involving design or construction of buildings, under the Constitution of 1945 and the Constitution of 1983, as not barring access to courts); and *Mullis v. Southern Co. Svcs.*, 250 Ga. 90 (296 SE2d 579) (1982) (upholding the same statute against an equal protection challenge under the 14th Amendment and the Constitution of 1976).

Love initially contends that subsection (b) (2) of the statute denies equal protection by treating differently from all other products liability plaintiffs both those products liability plaintiffs whose injuries occur after the expiration of an arbitrarily imposed ten-year bar and those whose injuries occur less than two years prior to the expiration of the ten-year period, thus abbreviating the otherwise applicable two-year statute of limitation for such plaintiffs. Citing the 1978 report of the Senate Products Liability Study Committee (hereinafter, the "Report"), which focused on insurance industry problems generated by the open-ended liability of manufacturers, Love acknowledges that the Report included as the first of its recommendations that a ten-year statute of repose be enacted, but contends that the ten-year limitation is unconstitutionally arbitrary in that nothing in the report specifically recommends a period of ten years. Given our holding in *Craven* that a five-year statute of repose for medical malpractice actions, and the classifications generated thereby (being analogous to those complained of by Love), are rationally related to the purpose of eliminating stale claims and stabilizing medical insurance underwriting, we cannot regard a ten-year limitation for products liability actions, adopted for the same purposes, as either arbitrary or unreasonable. Accordingly, we conclude that as to OCGA § 51-1-11 (b) (2), Love has not sustained his burden.

The primary focus of Love's equal protection argument, however, is subsection (c) by which, he claims, the General Assembly arbitrarily and unreasonably extended the ten-year bar to negligence products liability claims, thereby imposing the same disparate treatment on negligence plaintiffs as was visited on other products liability plaintiffs by subsection (b) (2). His argument is premised on the absence of any recommendation in the Report that negligence actions be subject to the ten-year bar recommended for strict liability actions. While it appears to be true that the extension of the statute to negligence actions occurred in response to this Court's decision in *Hatcher v. Allied Products Corp.*, 256 Ga. 100 (344 SE2d 418) (1986) (the ten-year products liability statute of repose held not to apply to negligence actions), it does not follow that the adoption of subsection (c) was hasty and ill-considered and so unreasonable as to violate the guarantees of equal protection. The disparate treatment of otherwise similarly situated negligence plaintiffs, resulting from the application to them of subsection (b) (2), is no less reasonable than that of strict liability plaintiffs, which we have herein upheld as not violative of equal protection. For the same reasons, we uphold the extension of the statute of repose to products liability claims based on negligence.

Love further maintains that subsection (c) is constitutionally infirm because the exceptions therein, in particular the exceptions for claims based on products causing disease or birth defects, are so

broadly and vaguely drawn as to thwart the purpose of the statute and are rendered illogical by the General Assembly's failure also to except claims based on the most egregious injury, wrongful death.[5]

Pretermitting for the moment the question whether Love has standing to challenge the constitutionality of the exceptions to subsection (c), we note that the Report recommended that there be an exception to the statute of repose for products such as pharmaceuticals the injurious effects of which might not be evident within ten years of the first sale for consumption.[6] While it is apparent that the terms "disease" and "birth defect" are comprehensive enough to permit the survival of claims based on relatively minor and/or immediately discoverable injury, it is also evident that the intent of the legislature was to afford relief to plaintiffs whose claims are based on certain types of injury the latent effects of which may not be manifest for many years. Contrary to Love's contention, we do not find that the statutory exceptions were based on the extent of injury. "A legislature must have substantial latitude to establish classifications that roughly approximate the nature of the problem perceived. . . ." *Plyler v. Doe*, 457 U. S. 202, 216 (102 SC 2382, 72 LE2d 786) (1982).

> The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. . . . When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude.

*City of Cleburne v. Cleburne Living Ctr.*, 473 U. S. 432, 439 (105 SC 3249, 87 LE2d 313) (1985). "It is not necessary that the classification scheme be the perfect or the best one; nor do we focus on the fairness of a state law." *Bowman v. Knight,* 263 Ga. 222 (430 SE2d 582) (1993). Although as we have noted, the exceptions might have been more narrowly drawn, we are not persuaded by Love that they do not rationally further a legitimate state interest.

2. Love also attacks OCGA § 51-1-11 (c) on the ground that it violates due process in two respects: (a) that the word "disease," undefined by the statute, is so vague as to render the statute void and (b) that the ten-year bar deprives products liability plaintiffs of vested rights in causes of action. As to Love's first contention, we conclude that the trial court did not err in ruling that Love did not have

---

[5] Presumably to the extent that Love's attack on subsection (c) is premised on the irrationality of the exceptions thereto, he also challenges the exception for actions based on conduct of the manufacturer manifesting "willful, reckless or wanton disregard for life or property"; however Love offers no authority and very little argument, except the most general contention to support his attack on that exception.

[6] Report, p. 19.

standing to challenge the disease exception. Because his complaint alleged only that one or more negligently manufactured products caused the injuries and the wrongful deaths, not diseases, Love cannot show that the allegedly unconstitutional feature of the statute, i.e., the vague exception for disease, has infringed his rights. *South Ga. Nat. Gas v. Ga. Pub. Svc. Comm.*, 214 Ga. 174, 175 (1) (104 SE2d 97) (1958).[7]

Love's second contention is two-pronged. He argues first that OCGA § 51-1-11 violates due process on its face because it foreshortens the statute of limitation for plaintiffs whose injuries arise more than eight years after the sale of the product and bars, before they accrue, the claims of plaintiffs whose injuries occur more than ten years after the sale. Liability limitation is a "classic example of an economic regulation — a legislative effort to structure and accommodate 'the burdens and benefits of economic life' [cit.]" and is thus presumed constitutional unless the legislature is shown to have acted in an irrational or arbitrary way. *Duke Power Co. v. Carolina Environ. Study Group*, 438 U. S. 59, 83 (98 SC 2620, 57 LE2d 595) (1978); accord *Eddings v. Volkswagenwerk, A.G.*, 835 F2d 1369 (11th Cir. 1988) (facial due process attack on similar statute of repose dismissed). As we have already noted, the acknowledged objectives of the General Assembly for enacting OCGA § 51-1-11 (b) (2) and (c) are legitimate and constitutional ends of government; we hold that Love has not met his burden of showing that the means chosen bear no rational relationship to those objectives. Love's argument that the statute, as applied, deprives him of vested rights in his causes of action also fails. The power of the legislature to create, modify or abolish rights to sue has been clearly and repeatedly recognized both by the U. S. Supreme Court and by this Court. *Duke Power*, supra at 88, n. 32; accord *Teasley v. Mathis*, 243 Ga. 561 (255 SE2d 57) (1979). The enactment of a statute delineating or, indeed, even abolishing a cause of action before it has accrued, deprives the plaintiff of no vested right. *Synalloy Corp. v. Newton*, 254 Ga. 174 (2) (326 SE2d 470) (1985). Love's reliance on *Browning v. Maytag Corp.*, 261 Ga. 20 (401 SE2d 725) (1991) is misplaced; there is no issue here of retroactive application of the statute as subsection (c) was in effect before the fire occurred and the causes of action accrued. Likewise, Love's contention that the renewal actions filed on December 17, 1992 were,

---

[7] Notwithstanding the acknowledged scope of the disease and birth defect exceptions, we are not persuaded by the argument Love makes in his brief that a fact issue exists as to whether or not his fire injuries resulted in physical and psychological disease and whether the deaths of his family were the (immediate) result of lungs diseased by smoke inhalation. To accept Love's argument would be to expand the term "disease" virtually to the point of meaninglessness in the context of the statute.

in effect, continuations of timely filed original actions, is incorrect. Love voluntarily dismissed the originally pending suits. Having terminated those actions completely, OCGA § 51-1-11 barred absolutely, but not unconstitutionally, these renewal actions. *Wright v. Robinson*, supra.

3. Love's argument that OCGA § 51-1-11 denies him access to the courts in violation of Art. I, Sec. I, Pars. I and XII of the 1983 Georgia Constitution is without merit. *Nelms v. Ga. Manor Condo. Assn.*, supra. Nor does the statute violate any right guaranteed to appellant under Art. I, Sec. I, Par. I thereof. Cf. *Allrid v. Emory Univ.*, 249 Ga. 35 (285 SE2d 521) (1982).

4. Finally, we regard as without merit Love's contention that OCGA § 51-1-11 violates the one subject matter limitation of Art. III, Sec. V, Par. III of the 1983 Georgia Constitution. *Wall v. Bd. of Elections of Chatham County*, 242 Ga. 566 (250 SE2d 408) (1978).

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 7, 1994 —
RECONSIDERATION DENIED DECEMBER 2, 1994.

*Louis K. Polonsky, Jane E. Strell,* for appellant.
*Nall, Miller, Owens, Hocutt & Howard, James S. Owens, Jr., George R. Neuhauser, King & Spalding, Gordon A. Smith,* for appellees.