S94G0425. CHRYSLER CORPORATION v. BATTEN et al.

(450 SE2d 208)

HUNSTEIN, Justice.

Patricia Batten was driving a Chrysler LeBaron purchased in May 1978 when she was injured in a two-car collision in October 1988. Batten and her husband brought suit against Chrysler Corporation and the driver of the other vehicle in 1990 seeking damages for her injuries and his loss of consortium. Included among the allegations as to Chrysler were claims under both strict liability and negligence theories that the seat belt mechanism in the LeBaron was defectively designed and that Chrysler negligently failed to warn of the danger posed by the defectively-designed seat belt. Chrysler moved for summary judgment, which was granted solely on the basis that plaintiffs'

complaint was barred by the statute of repose. OCGA § 51-1-11 (b) (2), (c). The Court of Appeals reversed as to the claims sounding in negligence. *Batten v. Chrysler Corp.*, 211 Ga. App. 173 (438 SE2d 647) (1993). Writ of certiorari was granted to consider the Court of Appeals' opinion.

1. The complaint in this case sets forth two separate causes of action in negligence: one based on the sale of a defective product and the other based on the failure to warn of a danger arising from the use of that product. Accord *Mack Trucks v. Conkle*, 263 Ga. 539, 540 (1) (436 SE2d 635) (1993) (negligent failure to warn is a negligence theory of products liability recognized under final sentence in OCGA § 51-1-11 (c)). The distinction between these causes of action reflects the different duties that devolve upon manufacturers. While a manufacturer has a duty to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses, see generally *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698 (294 SE2d 541) (1982), "the manufacturer of a product which, to its actual or constructive knowledge, involves danger to users, has a duty to give warning of such danger. [Cit.]" *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 335 (319 SE2d 470) (1984). See also *Stiltjes v. Ridco Exterm. Co.*, 192 Ga. App. 778, 780 (2) (b) (386 SE2d 696) (1989). Breach of these different duties hence gives rise to separate and distinct claims. While a factual overlap between these claims is possible, in that some products are defective solely due to an inadequate or absent warning, e.g., *Continental Research Corp. v. Reeves*, 204 Ga. App. 120 (419 SE2d 48) (1992); see also 2 American Law of Products Liability 3d, § 28:10, the claims are not necessarily coextensive, see, e.g., *Banks v. ICI Americas*, 264 Ga. 732 (450 SE2d 671) (1994) (design defect claim viable although failure to warn claim preempted by federal law), and factual distinctions between the two claims are readily apparent in those cases where the duty to warn of a danger arises from a manufacturer's post-sale knowledge acquired months, years, or even decades after the date of the first sale of the product. See *Mack Trucks*, supra; see also, e.g., *Owens-Illinois v. Zenobia*, 601 A2d 633 (II) (Md. 1992); *Cover v. Cohen*, 461 NE2d 864 (III) (NY 1984).

In failure to warn cases, the duty to warn arises whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product. *Stiltjes*, supra; *Stubblefield*, supra; see also Maleski, Ga. Products Liability (2d ed.), §§ 1-5, 7-1. An actual or constructive knowledge requirement is consonant with Georgia tort law in general, see, e.g., *Alterman Foods v. Ligon*, 246 Ga. 620 (272 SE2d 327) (1980) (premises liability); *Kemp v. Rouse-Atlanta*, 207 Ga. App. 876 (429 SE2d 264) (1993) (negligent hiring and/or retention), and is in accord with the position taken by foreign jurisdictions

and legal treatises. See, e.g., *Cover*, supra, 461 NE2d at 871; *Hermes v. Pfizer, Inc.*, 848 F2d 66 (A) (5th Cir. 1988); see also Restatement (2d) of Torts, § 402A, Comment j (seller is required to give warning "if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge" of the danger, id. at p. 353); Prosser and Keeton, The Law of Torts (5th ed.), § 96 (2).

2. OCGA § 51-1-11 provides, in pertinent part, as follows:

> (b) (2) No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.
>
> . . .
>
> (c) The limitation of [subsection (b) (2)] regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability, except an action seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect, or arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property. Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.

The ten-year statute of repose was enacted in order to address problems generated by the open-ended liability of manufacturers so as to eliminate stale claims and stabilize products liability underwriting. *Love v. Whirlpool Corp.*, 264 Ga. 701 (1) (449 SE2d 602) (1994). Hence, strict liability actions filed more than ten years after the "date of the first sale for use or consumption of" the product are completely barred. OCGA § 51-1-11 (b) (2); *Hatcher v. Allied Products Corp.*, 256 Ga. 100 (1) (344 SE2d 418) (1986). Subsection (c)[1] extends the ten-year statute of repose to negligence actions, but differs from subsection (b) (2) by providing for two exceptions to the statute of repose, i.e., where the manufacturer's negligence resulted in a product causing disease or birth defect, or where the injuries or damages arose

---

[1] Subsection (c) was enacted by the legislature in response to the holding in the second division in *Hatcher* that subsection (b) (2) does not apply to products liability cases based in negligence. See *Love*, supra.

out of conduct manifesting a "willful, reckless, or wanton disregard for life or property." See *Love,* supra. Where either of these exceptions applies, a plaintiff is authorized to maintain his or her cause of action based on the sale of a defective product notwithstanding the fact that the action is initiated more than ten years from "the date of the first sale." OCGA § 51-1-11 (c).

3. As to plaintiffs' claims based on the 1978 sale of the LeBaron automobile with its allegedly defectively-designed seat belt retractor mechanism, the claims accrued after the enactment of OCGA § 51-1-11 (c), compare *Browning v. Maytag Corp.,* 261 Ga. 20 (401 SE2d 725) (1991), and thus are barred unless sufficient evidence was adduced to create a fact question whether Chrysler's conduct manifested a "willful, reckless, or wanton disregard for life" so as to bring the claims within this exception to the statute of repose.

> Wilful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences . . . [as to be the] equivalent in spirit to actual intent.

(Citations and punctuation omitted.) *Hendon v. DeKalb County,* 203 Ga. App. 750, 758 (417 SE2d 705) (1992). See also *Poole v. City of Louisville,* 107 Ga. App. 305, 307 (130 SE2d 157) (1963).

Reviewing the evidence of wilful, reckless, or wanton conduct with respect to the seat belt mechanism in the 1978 LeBaron, the record reveals that the documents from the National Highway Traffic Safety Administration ("NHTSA") on which plaintiffs rely pertain to the 1975 seat belt retractor mechanism which was redesigned (albeit with minor modifications) following the NHTSA investigation. While these documents may be some evidence of a defect in the 1975 seat belt, they are of little significance in evaluating Chrysler's culpability in incorporating the redesigned seat belt mechanism into the 1978 LeBaron.

Similarly, the testimony of plaintiffs' expert witness, Billy Peterson, was insufficient to establish the requisite wilful, reckless, or wanton conduct with respect to the 1978 seat belt mechanism. Peterson's opinion was based exclusively on the alleged defect in the 1975 mechanism, as demonstrated by his statement that he had no information other than the 1988 accident to suggest that the modifications made to the 1975 mechanism were ineffective or failed to correct the earlier problems.

This evidence is insufficient as a matter of law to support a finding that Chrysler's conduct manifested a "willful, reckless, or wanton disregard for life or property." OCGA § 51-1-11 (c). See generally *Louisville &c. R. Co. v. Young,* 112 Ga. App. 608, 613-614 (145 SE2d

700) (1965). Accordingly, the trial court properly granted summary judgment to Chrysler on plaintiffs' claims arising out of the 1978 sale of the LeBaron automobile. *Trammell v. Baird*, 262 Ga. 124, 126 (413 SE2d 445) (1992).

4. We now address application of the statute of repose to the failure-to-warn claim. All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law, including decisions of the courts. *Leonard v. Benjamin*, 253 Ga. 718, 719 (324 SE2d 185) (1985). With this presumption in mind, we consider the final sentence in OCGA § 51-1-11 (c):

> Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.

With this language the legislature carefully excluded failure-to-warn causes of action from the statute of repose, thereby applying the statute only to those causes of action arising out of the sale of the defective product. That "[n]othing" relieves a manufacturer from the duty to warn reflects the legislature's recognition of the possibility that this duty may not emerge until long after the statute of repose has extinguished any cause of action arising out of the product's sale; that the duty to warn arises "once th[e] danger becomes known" reflects the existing case law with its actual or constructive knowledge standard.

Contrary to the dissent's position, the exclusion set forth in the final sentence is not an exception which affects the running of the statute of repose on sale-of-defective-products causes of action. Rather, the exclusion places failure-to-warn causes of action outside the ambit of the statute of repose, thereby precluding use of the statute to relieve manufacturers of their liability for failing to warn of a danger arising from the use of a product whenever that danger becomes known to the manufacturers.

Because plaintiffs' claims based on negligent failure to warn of the danger arising from the defectively-designed seat belt are not barred by the statute of repose, the Court of Appeals did not err by reversing the trial court's grant of summary judgment to Chrysler thereon.[2]

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunt, C. J., and Fletcher, J., who dissent.*

---

[2] Because the sole issue raised and ruled upon in the summary judgment was the applicability of the statute of repose to the Battens' claims, we accordingly express no opinion as to the sufficiency of Ms. Batten's evidence to support her failure-to-warn claim.

FLETCHER, Justice, dissenting.

While I concur in Division 3, I dissent because the majority's interpretation of the final sentence of OCGA § 51-1-11 (c) is inconsistent with the legislative intent and purpose of the statute. As the majority notes in footnote 1, subsection (c) was enacted in response to the holding in *Hatcher v. Allied Products Corp.*, 256 Ga. 100 (344 SE2d 418) (1986) that the statute of repose did not apply to negligence actions. The legislature recognized that to provide a statute of repose for strict liability claims while exempting negligence actions effectively destroyed the purpose of the statute, which was to eliminate stale claims and provide a definite time beyond which a manufacturer is no longer subject to liability. Thus, the legislature's purpose in expanding the scope of OCGA § 51-1-11 was to breathe life back into the statute of repose.

Contrary to the majority's strained construction of the statute, the legislature cannot have intended in the same breath to remove failure to warn claims from the ambit of the statute of repose. Such a construction would eviscerate the remainder of § 51-1-11, because, as the majority's opinion demonstrates, a claim based on the sale of a defective product may almost always be couched as a failure to warn of the danger in the product. See, e.g., *Wells v. Ortho Pharmaceutical Corp.*, 615 FSupp. 262, 296 (N.D. Ga. 1985) ("the elements of plaintiffs' strict liability theory are essentially the same as the elements of their theory of negligent failure to warn"), aff'd in part and modified in part on other grounds, 788 F2d 741 (11th Cir. 1986).

Furthermore, the plain language of OCGA § 51-1-11 (c) that the duty to warn is triggered "once that danger *becomes known* to the manufacturer" contemplates an actual knowledge standard. A constructive knowledge standard disregards the fact that the legislature intended to expand the reach of the statute of repose. Had the legislature intended to embrace the constructive knowledge standard, it would have so provided. See, e.g., OCGA §§ 16-12-80 (a); 34-8-34; 43-30-13 (expressly incorporating constructive knowledge standard).

Although the majority refuses to reach the issue, the evidence is clear that Batten has not established that Chrysler "should have known" of the alleged danger even under a constructive knowledge standard. Plaintiffs' failure to warn theory is that Chrysler should have known of a defect in the redesigned 1978 seat belt because of problems with the 1975 seat belt and should have warned of this defect at the time the car was sold. However, in reaching his opinion that Chrysler should have known of the defect, plaintiff's expert relied upon documents relating to the 1975 retractor, not the redesigned 1978 retractor installed into Batten's vehicle. The expert also admitted that he had no evidence other than this accident that the redesign failed to correct the earlier problem. The existence of one accident,

without other evidence, cannot as a matter of law be constructive notice to the manufacturer of a danger of which it should have warned *prior* to the accident.

I am authorized to state that Chief Justice Hunt joins in this dissent.

DECIDED DECEMBER 5, 1994 —
RECONSIDERATION DENIED DECEMBER 20, 1994.

*Freeman & Hawkins, Joe C. Freeman, Jr., Stephen M. Lore, Charles R. Beans, Dillard, Bower & East, Terry A. Dillard, Bryant H. Bower, Jr.,* for appellant.

*Berrien L. Sutton, Ronald W. Hallman,* for appellees.

*King & Spalding, Chilton D. Varner, Lawrence A. Slovensky,* amicus curiae.