## S96A0377. BELK et al. v. WESTBROOKS et al.

(469 SE2d 149)

HUNSTEIN, Justice,

The Georgia Firemen's Pension Fund (hereinafter "the Fund"), of which appellees serve as the board of trustees, is a state-created pension system for firemen and voluntary firemen who serve with state, county or municipal fire departments, including volunteer fire departments, which serve areas located within counties and municipalities. OCGA Title 47, Chapter 7. The Fund is intended to supplement primary pension benefits provided by fire departments or the governmental units or volunteer districts establishing fire departments. Although members of the Fund are required to pay monthly dues, the Fund is financed principally by the proceeds of a state-wide tax on certain insurance premiums. OCGA §§ 47-7-60; 47-7-61. Membership in the Fund is voluntary, however it is limited to firemen and volunteer firemen affiliated, either as employees or volunteers, with "full-time fire departments," OCGA § 47-7-1 (4), or "volunteer fire departments," OCGA § 47-7-1 (6), which are rated between Class 1 and Class 8, inclusive, by the Insurance Services Office ("ISO") or a successor organization as provided under OCGA § 47-7-1 (4) (B) and (6) (C), respectively.[1] In order to achieve a Class 8 ranking, fire suppression facilities must have a water supply capable of delivering water at the rate of at least 250 gallons per minute (hereinafter "g.p.m.") for two hours, plus the historical maximum daily rate of consumption of water from that source for other purposes. Such a fire suppression facility must also have equipment capable of pumping and delivering water to involved property at a rate of 250 g.p.m. at a pressure of 150 pounds per square inch. Fire suppression facilities which do not achieve a Class 8 or better (i.e., lower numerical) rating are usually unable to meet the water source requirements and fire suppression facilities which do achieve a Class 8 or better rating typically are able to rely on a public, piped water system. However, the requisite water source may also be supplied by a river, lake, pond or other such source or by a fleet of vehicles sufficiently equipped to

---

[1] A "fire department" is defined under the statute as a full-time fire department or volunteer fire department which is (a) certified by the Georgia Fire Academy and (b) ranked Class 8 or better under the Fire Suppression Rating Schedule published by the ISO. "Fire suppression facility(ies)," as used hereinafter, refers to a fire department (in the generic sense), whether or not it is a fire department for purposes of OCGA § 47-7-1 (2).

The ISO is a rating organization which is required to be and is licensed as such by the Commissioner of Insurance under OCGA Title 33, Chapter 9. The function of the ISO is to develop a standardized method for the assessment of risk and loss exposure for property for fire insurance purposes. The Fire Suppression Rating Schedule developed by ISO in collaboration with other insurance and fire protection organizations provides standardized criteria for public fire suppression facilities. The ISO Rating Schedule was approved by the state insurance commissioner in 1980 and has not been amended since.

ferry and pump water at the requisite pressure and volume. Fire suppression facilities which do not meet Class 8 standards are typically rural, volunteer fire suppression facilities.

Appellants, certain named plaintiffs and all members of all Class 9 fire suppression facilities in Georgia, all of whom are rural volunteer firemen, brought the underlying action to challenge the constitutionality of OCGA § 47-7-1 on the ground that it denies them equal protection by unreasonably classifying them differently than those firemen whose fire suppression facilities are rated Class 8 or better. While appellants acknowledge that membership in the Fund is not a fundamental right, nor do they form a suspect class, they nevertheless contend that they perform essentially the same work as all other firemen and that they should not be denied membership in the Fund simply because the jurisdiction which they serve cannot, or chooses not to, expend the funds necessary to provide the water source necessary to meet Class 8 criteria, a situation over which appellants have no control. Thus, they argue, the nexus between the legitimate legislative objective of improving fire protection and the incentive chosen is constitutionally inadequate. Appellants now appeal the trial court's grant of appellees' motion for summary judgment.

Under the rational basis standard of review, classifications drawn by the state cannot be arbitrary and must bear some reasonable relation to a legitimate governmental objective. *Price v. Lithonia Lighting Co.*, 256 Ga. 49 (343 SE2d 688) (1986). Moreover, a law enacted by the General Assembly is presumed to be constitutional; the burden is on a challenger to prove its invalidity. *Love v. Whirlpool Corp.*, 264 Ga. 701 (449 SE2d 602) (1994); *Smith v. Cobb County-Kennestone Hosp. Auth.*, 262 Ga. 566 (423 SE2d 235) (1992). The contested definitional classification has been in effect since 1955; that it has not been challenged for nearly 40 years is itself an indicator of the reasonableness of the classification. *McLennan v. Aldredge*, 223 Ga. 879 (159 SE2d 682) (1968). The General Assembly has expressly stated its purpose in the existing statutory classification of firemen for Fund purposes, to-wit, to induce fire suppression facilities to upgrade in order to meet what the General Assembly recognizes as the minimum standards essential to improving fire fighting ability.[2]

The inability of individual appellants to persuade local government jurisdictions which they serve to expend tax revenues authorized for purpose of fire protection (see OCGA §§ 33-8-8.2; 33-8-8.3 (a) (1) (B)) does not render constitutionally infirm the inducement

---

[2] The statutory standards set forth in OCGA § 25-3-23 establish the minimum standards for the legal organization of a fire suppression facility (referred to therein as "fire department"). However a fire suppression facility which could meet these standards would not meet even Class 9 criteria.

630

selected by the legislature nor does the decision by the legislature not to mandate such expenditures at local levels. The General Assembly's election to extend the benefits of the Fund (as the state tax revenues which those benefits represent) only to those jurisdictions which satisfy certain recognized minimum fire protection criteria rests appropriately with the legislature. See *Mathews v. Diaz*, 426 U. S. 67 (96 SC 1883, 48 LE2d 478) (1976); *Dandridge v. Williams*, 397 U. S. 471 (90 SC 1153, 25 LE2d 491) (1970).

*Judgment affirmed. All the Justices concur.*

FLETCHER, Presiding Justice, concurring.

Volunteer firefighters in rural fire departments challenge their exclusion from the Georgia Firemen's Pension Fund as a violation of equal protection. There is a rational basis for granting benefits to firefighters who work for fire departments that are rated Class 8 or better but not to firefighters who work for Class 9 departments. The legislature's classification bears a reasonable relationship to the legitimate government objective of improving the fire-fighting capabilities of fire departments. By offering state-funded benefits only to firefighters who work for fire departments that meet minimum standards, the state encourages local governments to use their resources to meet those standards and thus increase their fire department's ability to suppress fires. For this reason, I concur.

DECIDED APRIL 29, 1996.

*R. Dale Perry*, for appellants.

*Harman, Owen, Saunders & Sweeney, Timothy J. Sweeney*, for appellees.