# WHOLE COURT

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0527.  FLETCHER  v.  WATER  APPLICATIONS  JE-025
    DISTRIBUTION GROUP, INC. et al.

ELLINGTON, Presiding Judge.

Marcella Fletcher appeals from the order of the State Court of Thomas County granting summary judgment to Water Applications Distribution Group, Inc., ("Water Applications") and CertainTeed Corporation ("CertainTeed") in this suit for personal injury arising out of the alleged negligence of the appellees, a vendor and manufacturer, respectively, of asbestos-containing cement water pipe. Fletcher averred that she was exposed to her father's asbestos dust-contaminated work clothing between 1960 and 1977 when she was responsible for washing her family's laundry at home and that, as a result of that exposure, she developed malignant pleural mesothelioma. The trial court granted summary judgment to the appellees,

concluding that they owed no duty of care to Fletcher under these circumstances. For the reasons that follow, we affirm in part and reverse in part.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant.

(Citations, punctuation and footnote omitted.) *MCG Health, Inc. v. Barton*, 285 Ga. App. 577, 578 (647 SE2d 81) (2007). So viewed, the record shows the following relevant facts.

Fletcher was diagnosed with malignant pleural mesothelioma on August 5, 2012. She produced evidence that the disease is caused by asbestos exposure and has a latency period of approximately 40 years from the time of exposure to the onset of disease. Fletcher deposed that she was exposed to two sources of asbestos during her lifetime: (1) during a 1971construction project in her family home and (2) during the seventeen years between 1960 and 1977 when she laundered her father's asbestos dust-contaminated work clothing at home. Fletcher recalled seeing a gray dust on her father's work clothes that became an airborne "mist" when she shook out his clothing

prior to laundering it. Fletcher presented evidence that asbestos dust released from work clothing could remain in the home as a continuing contaminant, exposing a worker's family members to a risk of mesothelioma.

Fletcher's father was employed by the City of Thomasville Water & Light Department from 1948 until his retirement in 1983. From 1971 through 1977, her father's primary job duty was handling, cutting, installing, and repairing water pipe. A city employee testified that Fletcher's father worked primarily with CertainTeed asbestos-containing cement pipe. When Fletcher's father cut and beveled the pipes, dust containing asbestos was deposited on his work clothing. At the end of each work day, he wore those contaminated work clothes home.

CertainTeed has been manufacturing asbestos-containing products since 1930. It began manufacturing asbestos-containing water and sewer pipe in 1962. Sales invoices establish that approximately 30,158 linear feet of CertainTeed "Fluid-Tite" asbestos-containing cement pipe was shipped to the City of Thomasville Water & Light Department between 1969 and 1973. The invoices also show that the pipe was sold to the City through a local vendor, Davis Meter & Supply Company, the predecessor to Water Applications. The pipes contained approximately 10 to 20 per

cent asbestos by weight, and they had to be cut and beveled in order to be connected to other pipes.

Fletcher presented evidence in response to the appellees' motion for summary judgment showing that the dangers, not only to a worker but also to a worker's family, from work clothing that had been contaminated with toxic substances were known and documented in published occupational health and safety literature as early as 1913. In 1943, the Pennsylvania Department of Labor distributed to industrial employers in the state, including CertainTeed, a "Safe Practice Bulletin" advising employers to have their employees keep their asbestos-contaminated work clothing at work in special lockers. In 1949, CertainTeed joined the National Safety Council, an industry public service organization, and, in 1954, the National Safety Council published articles warning against the dangers of workers carrying toxic substances home to their families on their work clothes. CertainTeed admitted in a verified interrogatory in another lawsuit "that it became aware at least by 1962, . . . if not earlier" that exposure to asbestos fibers was associated with an increased risk of developing certain asbestos-related diseases, including mesothelioma. In 1963, the National Safety Council again warned its members that "contaminated work clothes should not be taken home where a toxic dust could contaminate the home or expose

4

other members of the family." In 1964, during a conference attended by CertainTeed, researchers presented evidence that mesothelioma was associated not only with occupational exposure to asbestos dust but also to exposure to dust brought home by relatives working with asbestos. In 1972, Occupational Safety and Health Administration ("OSHA") rules and regulations required employers to provide special clothing for those working with asbestos fibers and to properly isolate those work clothes to prevent the employee's street clothes from becoming contaminated. Fletcher adduced evidence that neither appellee had placed an asbestos health hazard warning on the asbestos-containing water pipe products during the time of Fletcher's alleged exposure.

Fletcher sued CertainTeed and Water Applications under theories of negligence. She asserted against both appellees various "general negligence" claims as well a claim for negligent failure to warn of the health risks associated with the product's use. Fletcher also sued both appellees under a theory of negligence for selling a defective product, asserting that the water pipe was defective because it contained asbestos fibers that were released into the air when the pipe was cut.[1]

---

[1] We note that, because Fletcher claims that she suffers from a disease allegedly caused by the appellees' negligence, her claims are not barred by the statute of repose applicable to statutory "strict liability" claims. See OCGA § 51-1-11 (b) (2). ("No

5

CertainTeed and Water Applications both moved for summary judgment, and, following a hearing, the trial court granted the motions, concluding that the appellees did not owe Fletcher a duty of care because she was neither a user nor a consumer of

action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury.") Fletcher's negligence-based claims, however, are subject to OCGA § 51-1-11 (c), which provides:

> The limitation of paragraph (2) of subsection (b) of this Code section regarding bringing an action within ten years from the date of the first sale for use or consumption of personal property shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability, *except an action seeking to recover from a manufacturer for injuries or damages arising out of the negligence of such manufacturer in manufacturing products which cause a disease or birth defect*, or arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property. Nothing contained in this subsection shall relieve a manufacturer from the duty to warn of a danger arising from use of a product once that danger becomes known to the manufacturer.

(emphasis supplied.) See *Chrysler Corp. v. Batten*, 264 Ga. 723, 725-726 (2) (450 SE2d 208) (1994) (Holding that OCGA § 51-1-1l (c) "extends the ten-year statute of repose to negligence actions, but differs from subsection (b) (2) by providing for two exceptions to the statute of repose, i.e., where the manufacturer's negligence resulted in a product causing disease or birth defect, or where the injuries or damages arose out of conduct manifesting a 'willful, reckless, or wanton disregard for life or property.'" (citation omitted.).

6

the pipe at issue and because the appellees "could not have reasonably foreseen that [she] would be affected by their product." It is from this ruling that Fletcher appeals.

> To state a cause of action for negligence in Georgia, the following elements are essential: (1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

(Citation omitted.) *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). "Before negligence can be predicated upon a given act, some duty to the individual complaining must be sought and found, the observance of which duty would have averted or avoided the injury or damage." (Citations omitted.) *CSX Transportation, Inc. v. Williams*, 278 Ga. 888, 889 (608 SE2d 208) (2005). "The duty can arise either from a valid legislative enactment, that is, by statute, or be imposed by a common law principle recognized in the caselaw." *Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565, 566-567 (713 SE2d 835) (2011). "The existence of a legal duty is a question of law for the court." Id. at 567.

1. *CertainTeed's duty to Fletcher*. Generally, under Georgia negligence law, a product manufacturer "has a duty to exercise reasonable care in manufacturing its

7

products so as to make products that are reasonably safe for intended or foreseeable uses[.]" (Citations omitted.) *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1) (450 SE2d 208) (1994). With respect to product manufacturers, Georgia law recognizes causes of action based on three general categories of product defect: manufacturing defects, design defects, and warning defects. See *Banks v. ICI Americas*, 264 Ga. 732, 733 (1) (450 SE2d 671) (1994); *Chrysler Corp. v. Batten*, 264 Ga. at 724 (1).[2] The

_____

[2] According to one treatise, "the practical importance of general negligence principles has decreased in recent years as the Georgia Supreme Court has moved Georgia products liability law closer to the unified functional definitions of defect in the Restatement (Third)." J. Kennard Neal, Ga. Products Liability Law § 3:1 (4th ed.). The Restatement provides:

A product is defective when, at the time of sale or distribution, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. A product:
(a) contains a manufacturing defect when the product departs from its intended design even though all possible care was exercised in the preparation and marketing of the product;
(b) is defective in design when the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the alternative design renders the product not reasonably safe;
(c) is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

8

duties owed pursuant to each claim are not coextensive and must be analyzed separately. *Chrysler Corp. v. Batten*, 264 Ga. at 724 (1).

(a) *Manufacturing defect*. Generally, a manufacturing defect results from an error specifically in the fabrication process, as distinct from an error in the design process. See J. Kennard Neal, Ga. Products Liability Law § 6:1, n. 8 (4th ed.). Thus, for a manufacturing defect claim, "it is assumed that the design of the product is safe and had the product been manufactured in accordance with the design it would have been safe for consumer use[.]" *Banks v. ICI Americas*, 264 Ga. at 733 (1). Because a manufacturing defect represents a departure from a product's design specifications, a manufacturing defect may be found when the product at issue is compared "to a properly manufactured item from the same product line." (Citation omitted.) Id.

The facts alleged in Fletcher's claim for a manufacturing defect are not consistent with the proposition that, when CertainTeed fabricated the cement water pipe handled by Fletcher's father, it negligently departed from the design specifications for the pipe and that Fletcher's injuries arose from such negligent manufacture. Rather, Fletcher contends that an entire product line – the CertainTeed "Fluid-Tite" water pipe – is defective because it contains asbestos fibers that are

---

Restatement (Third) of Torts: Products Liability, § 2 (1998).

9

released when the pipe is cut. When a plaintiff calls into question the safety of an entire product line, as in this case, the claim is one for a design defect and not for a manufacturing defect. See Division 1 (b), infra. Because Fletcher's complaint does not set forth facts supporting the existence of a cause of action for a manufacturing defect, the trial court did not err in granting summary judgment to CertainTeed on this claim.

(b) *Design defect*. As the Supreme Court of Georgia has explained, in a products liability action for defective design,

> the focus [under Georgia statutory and case law] is not on use of the product. . . . [Rather], the proper analysis in a design defect case is to balance the risks inherent in a product design against the utility of the product so designed. . . . The "heart" of a design defect case is the reasonableness of selecting from among alternative product designs and adopting the safest feasible one. Consequently, the appropriate analysis . . . includes the consideration of whether the defendant failed to adopt a reasonable alternative design which would have reduced the foreseeable risks of harm presented by the product.

(Citations, punctuation, and footnotes omitted.) *Jones v. Nordictrack, Inc.*, 274 Ga. 115, 115-118 (550 SE2d 101) (2001). See also *Ogletree v. Navistar*, 271 Ga. 644, 645

(522 SE2d 467) (1999) ("In a negligent design case, the risk-utility analysis applies to determine whether the manufacturer is liable."). The risk-utility analysis is

> a test balancing the risks inherent in a product design against the utility of the product so designed. . . . [U]nder the risk-utility analysis for the determination whether a manufacturer should be liable for an entire product line, no finite set of factors can be considered comprehensive or applicable under every factual circumstance, since such matters must necessarily vary according to the unique facts of each case.

*Banks v. ICI Americas, Inc.*, 264 Ga. at 735-736 (1). Generally, "it is for the trier of fact to consider the numerous factors which are pertinent in balancing the risk of the product against its utility or benefit. . . . [D]etermination of a product's risks and benefits as a matter of law . . . will rarely be granted in design defect cases when any of these elements is disputed." (Citations omitted.) *Ogletree v. Navistar*, 271 Ga. at 646. A defendant bears the burden, in seeking a judgment as a matter of law, "to show plainly and indisputably an absence of *any* evidence that a product as designed is defective." (Citation omitted; emphasis in original.) Id.

Rather than addressing the issue of whether its product as designed was defective, CertainTeed contends it is entitled to judgment because Fletcher is not within a class of people whose interests are entitled to protection from its conduct,

11

citing *CSX Transp., Inc. v. Williams*, 278 Ga. 888 (608 SE2d 208) (2005). In that case, the Supreme Court of Georgia "decline[d] to extend on the basis of foreseeability" the duty that an employer owes to provide a safe workplace to its employees to encompass potential liability for injuries sustained by any third party, non-employee who might come into contact with its employees' asbestos-tainted work clothing at locations away from the workplace. Id. at 890-891. We conclude, however, that *CSX Transp., Inc. v. Williams* is not controlling when determining whether a manufacturer violated its duty of care in a design defect case. The risk-utility analysis applicable to such claims is not concerned with protecting only specified classes of people. See *Jones v. Nordictrack, Inc.*, 274 Ga. at 115-118; *Banks v. ICI Americas, Inc.*, 264 Ga. at 736 (1). Because CertainTeed failed to carry its burden of showing plainly and indisputably an absence of any evidence that its product as designed was defective under the risk-utility analysis, the trial court erred in granting summary judgment to CertainTeed on Fletcher's design defect claim. *Ogletree v. Navistar*, 271 Ga. at 647.

(c) *Warning defect*. "Under Georgia law, a manufacturer has a duty to warn of nonobvious foreseeable dangers from the normal use of its product." (Citations omitted.) *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F3d 284, 289 (III) (b) (11th

12

Cir.1994) (applying Georgia law). See also *Chrysler Corp. v. Batten*, 264 Ga. at 724 (1) ("[T]he manufacturer of a product which, to its actual or constructive knowledge, involves danger to users, has a duty to give warning of such danger.") (citations omitted); *Fouch v. Bicknell Supply Company*, 326 Ga. App. 863, 872 (2) (756 SE2d 682) (2014) (accord). The manufacturer's duty to warn continues even after the product has been sold. See *DeLoach v. Rovema Corp.*, 241 Ga. App. 802, 804 (527 SE2d 882) (2000) (recognizing a manufacturer's duty to warn consumers of a danger arising from the use of a product based on knowledge acquired after the product is sold). The manufacturer's duty to warn extends to users, consumers, and purchasers of the product.[3] Georgia law also requires a manufacturer to exercise reasonable care to inform third persons of foreseeable dangers arising from the reasonable use for which a product is intended. *R & R Insulation Svcs., Inc. v. Royal Indem. Co.*, 307 Ga. App. 419, 427 (3) (705 SE2d 223) (2010). Although, as a practical matter, Fletcher would not have seen warning labels placed on CertainTeed's pipe, she argues that, if CertainTeed had warned the City or Fletcher's father (the purchaser and user of the

---

[3] See *DeLoach v. Rovema Corp.*, 241 Ga. App. at 804 (manufacturer's duty extends to consumer of a product); *Zeigler v. CloWhite Co.*, 234 Ga. App. 627, 629 (2) (507 SE2d 182) (1998) (manufacturer's duty extends to user of a product); *Vickery v. Waste Mgmt. of Ga.*, 249 Ga. App. 659, 660 (2) (549 SE2d 482) (2001) (manufacturer's duty extends to purchaser of a product).

pipe, respectively) of the risks both to the user and to third parties from inhaling asbestos dust released by cutting the pipe, her father would have taken precautions to protect himself, his family, and others from exposure to the asbestos dust. See *Daniels v. Bucyrus-Erie Corp.*, 237 Ga. App. 828, 830 (516 SE2d 848) (1999) (A manufacturer's warning that is given "to a person in a position such that he may reasonably be expected to act so as to prevent the danger from manifesting itself" may be sufficient to reasonably protect third-party bystanders.) (citation and punctuation omitted).[4]

---

[4] This position is more consistent with the Restatement (Third) approach, which focuses on the foreseeable risk of harm to persons from a product that is rendered defective as a result of inadequate warnings or instructions. The Restatement (Third) of Torts: Products Liability, § 1 (1998) provides that "One engaged in the business of selling or otherwise distributing products who sells or distributes a defective product is subject to liability for harm to persons or property caused by the defect." Additionally, the Restatement (Third) of Torts: Products Liability § 2 (c) (1998) provides that a product

> is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

14

Applying this law to the facts of this case, we conclude that whether CertainTeed had a duty to warn of the risks of its asbestos-containing water pipe remains a question for the jury to resolve. Fletcher presented some evidence that, prior to and during the period that Fletcher's father was actively working with its pipe, CertainTeed had actual or constructive knowledge of the following: (1) asbestos is a hazardous substance that causes mesothelioma; (2) asbestos dust may be released from its asbestos-containing cement water pipe during the ordinary use of that product; (3) the asbestos dust may be deposited on the work clothing of those using the pipe; (4) workers who are unaware of the risks of asbestos dust may unwittingly expose others, in this case family members, to that dust. Because the facts adduced with respect to CertainTeed's knowledge are disputed and because questions concerning foreseeability are typically for the jury, the trial court erred in granting summary judgment to CertainTeed on Fletcher's negligent failure to warn claim. See *R & R Insulation Svcs. v. Royal Indem. Co.*, 307 Ga. App. at 427-430 (3) (a); *Wabash Metal Prods., Inc. v. AT Plastics Corp.*, 258 Ga. App. 884, 886-887 (1) (575 SE2d 683) (2002).

(d) *Miscellaneous "general negligence" claims*. Fletcher has asserted other general negligence claims against CertainTeed, e.g., negligent failure to test and

15

negligent failure to recall. However, Fletcher has not challenged the trial court's grant of summary judgment in favor of CertainTeed with respect to any of these other "general negligence" claims. Thus, with respect to those claims, the trial court's judgment is affirmed.

2. *Water Application's duty to Fletcher.* The record shows that Water Applications (as the successor to Davis Meter & Supply Company) was not involved in the manufacture of the water pipe at issue in this case; rather, it was a vendor. Fletcher obtained records from CertainTeed which show that Water Applications placed the order for the CertainTeed pipe for the City and that the pipe was shipped directly to the City. There is no evidence in the record establishing that Water Applications ever had possession of the pipe. Nor has Fletcher presented evidence from which a jury might infer that Water Applications had actual or constructive knowledge, at the time that it sold the pipe, of the health risks to third persons from asbestos dust released from CertainTeed's asbestos-containing water pipe.

(a) *Manufacturing and design defect claims and other "general negligence" claims.* As we held in Division 1 (a), Fletcher has not supported her claim for a manufacturing defect. Further, Fletcher has not challenged the trial court's grant of summary judgment in favor of Water Applications as to any of the other product

16

liability or "general negligence" claims alleged in the complaint, other than the claim alleging negligent to failure warn. Thus, with respect to those claims, the trial court's judgment is affirmed.

(b) *Negligent failure to warn*. "[T]he distributor of a product which, to its actual or constructive knowledge, involves danger to users has a duty to give warning of such danger *at the time of sale and delivery*." (Citations and punctuation omitted; emphasis supplied.) *Farmer v. Brannan Auto Parts*, 231 Ga. App. 353, 354 (1) (498 SE2d 583) (1998). Unlike a manufacturer, a seller or a distributor does not have a continuing duty to warn. *DeLoach v. Rovema Corp.*, 241 Ga. App. at 804-805. In this case, Fletcher has presented no evidence from which the fact-finder could reasonably infer that Water Applications was aware that the pipe contained no warning labels affixed by the manufacturer. There is no evidence that the pipe was ever in its possession. Further, all of the evidence that Fletcher adduced with respect to the dangers associated with asbestos dust released from the water pipe pertained to knowledge that CertainTeed, as the manufacturer of the product, would have had. Fletcher has not presented evidence from which a jury could infer that, at the time of sale, Water Applications had constructive knowledge of the hazards associated with asbestos dust residue released from CertainTeed's water pipe. Consequently, the trial

17

court did not err in granting summary judgment to Water Applications on Fletcher's negligent failure-to-warn claim.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Phipps, P. J., concur. McFadden, J., concurs fully in Divisions 1 and 2 (a) and concurs specially in Division 2 (b). Dillard, Ray and McMillian, JJ., concur fully in Divisions 1 (a), (d) and 2, and dissent as to Division 1 (b) and (c).*

A15A0527.  FLETCHER  v.  WATER  APPLICATIONS

DISTRIBUTION GROUP, INC. et al.

DILLARD, Judge, concurring in part and dissenting in part.

The trial court correctly granted summary judgment as to all of Fletcher's claims. Thus, I concur fully with Divisions 1 (a), (d) and 2 of the majority's opinion. However, I respectfully dissent as to Division 1 (b) and (c) of the majority's opinion, in which it contends that genuine issues of material fact remain as to whether CertainTeed owed Fletcher any duty.

Both Fletcher's negligent-design and duty-to-warn claims are grounded in negligence, and it is well established that "[i]n order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty."[1] A legal duty, of course, is the obligation to "conform to a standard of conduct under the law for the protection of others against unreasonable risks of harm."[2] And importantly, "[t]he existence of a legal duty is a question of law for the court."[3]

---

[1] *Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565, 566 (713 SE2d 835) (2011).

[2] *Id.*

[3] *Id.* at 567.

In this matter, Fletcher argues that CertainTeed owed her a duty because it was foreseeable that the asbestos contained in its products would contaminate her father's work clothes and then expose family members tasked with washing those clothes. However, in *CSX Transportation, Inc. v. Williams*,[4] the Supreme Court of Georgia rejected a nearly identical theory of duty. Specifically, in *Williams*, the plaintiffs sued their fathers' employer, CSXT, claiming that they were exposed to asbestos from the clothing their fathers wore while working for CSXT and that such exposure contributed to their asbestos-related disease.[5] Determining whether CSXT owed plaintiffs a legal duty, the Supreme Court noted that

> in fixing the bounds of duty, not only logic and science, but policy play
> an important role. However, it must also be recognized that there is a
> responsibility to consider the larger social consequences of the notion
> of duty and to correspondingly tailor that notion so that the illegal
> consequences of wrongs are limited to a controllable degree. The
> recognition of a common-law cause of action under the circumstances
> of this case would, in our opinion, expand traditional tort concepts

---

[4] 278 Ga. 888 (608 SE2d 208) (2005).

[5] *Id.*

3

beyond manageable bounds and create an almost infinite universe of potential plaintiffs.[6]

Accordingly, the Court declined "to extend on the basis of foreseeability the employer's duty beyond the workplace to encompass all who might come into contact with an employee or an employee's clothing outside the workplace."[7]

Although it acknowledges *Williams*, the majority concludes that it "is not controlling when determining whether a manufacturer *violated* its duty of care in a design defect case." But such a conclusion amounts to question begging given that *Williams* does not address whether a duty was *violated*, but rather is concerned with whether a duty is even owed as an initial matter.[8] And as the majority also acknowledges, establishing a legal duty in the first place is essential for stating a cause of action for negligence in Georgia.[9]

---

[6] *Id.* at 890 (punctuation omitted) (*citing Widera v. Ettco Wire and Cable Corp.*, 204 AD.2d 306, 307-08 (611 NYS2d 569) (1994)).

[7] *Williams*, 278 Ga. at 890-91.

[8] *See id.* at 889 (explaining that the question certified is "[w]hether Georgia negligence law imposes any duty on an employer to a third-party, non-employee, who comes into contact with its employee's asbestos-tainted work clothing at locations away from the workplace, such as the employee's home?").

[9] *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982); *accord Rasnick*, 289 Ga. at 566; *Williams*, 278 Ga. at 889; *Diamond v. Dep't of Transp.*, 326

In contrast to the majority, it is my view that the Supreme Court of Georgia's limitation on the parameters of who is owed a legal duty, as analyzed in *Williams*, also applies to limit the scope of the duty owed by manufacturers such as CertainTeed in this matter. Indeed, such manufacturers of asbestos-containing products are even further removed from household-exposure plaintiffs than an employer who utilizes such products at its worksite. And given such circumstances, finding as a matter of law that one so far removed, nevertheless, owes a duty to such a plaintiff "expands traditional tort concepts beyond manageable bounds" and, in fact, creates the "almost infinite universe of potential plaintiffs" against which *Williams* warns.[10] Accordingly, I would affirm the trial court's grant of summary judgment in its entirety.

For all of the foregoing reasons, I concur fully with Divisions 1 (a), (d) and 2 of the majority's opinion, but I respectfully dissent as to Division 1 (b) and (c).

I am authorized to state that Judge Ray and Judge McMillian join in this opinion concurring in part and dissenting in part.

---

Ga. App. 189, 193 (2) (756 SE2d 277) (2014).

[10] *Williams*, 278 Ga. at 890.

A15A0527.　FLETCHER　v.　WATER　APPLICATIONS　McF-XXX

　　DISTRIBUTION GROUP, INC. et al.


MCFADDEN, Judge, concurring fully and specially.

I write separately to withhold my full concurrence from Division 2 (b), in

which the majority holds that Water Applications is entitled to summary judgment on

Fletcher's negligent failure-to-warn claim due to lack of knowledge. But I reach the same result on the basis of failure to show a duty to warn. I concur fully in the remainder of the opinion.

The majority holds that Water Applications is entitled to summary judgment on the failure-to-warn claim because "Fletcher has not presented evidence from which a jury could infer that . . . Water Applications had constructive knowledge of the hazards associated with asbestos dust residue released from CertainTeed's water pipe." We should not reach the issue of knowledge because Fletcher had discovery pending on that issue when Water Applications's motion for summary judgment was argued and she properly brought that outstanding discovery to the attention of the trial court by filing a motion under OCGA § 9-11-56 (f). The trial court responded to that motion at the summary judgment hearing by announcing that he would limit his consideration to the issue of duty. As for knowledge, he proposed to "just kick that can down the road."

Nonetheless, I agree that Water Applications is entitled to summary judgment on the failure-to-warn claim. I am persuaded – for reasons corresponding to those set out in Judge Dillard's opinion concurring in part and dissenting in part -- that that duty does not extend to Water Applications's conduct.

2