43415. STILTJES v. RIDCO EXTERMINATING COMPANY, INC. et al.
(347 SE2d 568)

GREGORY, Justice.

Certiorari was granted to consider the Court of Appeals' opinion in *Stiltjes v. Ridco Exterminating Co.*, 178 Ga. App. 438 (343 SE2d 715) (1986). Pamela Stiltjes sued Dettelbach Pesticide Corporation and Ridco Exterminating Company, Inc. in Gwinnett Superior Court for the wrongful death of her husband. Recovery was sought on the two distinct theories of strict liability and negligence. The trial court granted summary judgment in favor of Dettelbach against the theory of strict liability but denied summary judgment to Dettelbach on the negligence theory. Both the grant and denial of summary judgment were appealed. The Court of Appeals affirmed the grant of summary judgment as to strict liability and reversed the denial of summary judgment as to negligence. This eliminated Dettelbach from the case and left Ridco as the sole defendant.

Our particular concern in granting the writ of certiorari was whether OCGA § 51-4-1 (2) (the definitional section of the Georgia wrongful death statute formerly codified at Code Ann. § 105-1301) defines "homicide" in such a way as to include a wrongful death claim for strict liability based on inadequate warnings or instructions.

Stiltjes' complaint alleged that her landlord contracted with Ridco to eliminate or reduce the number of pests infesting her residence. Ridco was informed that Stiltjes' husband suffered from bronchial asthma. Therefore, in the first two treatments for pests cer-

tain pesticides were used which were described as "non-allergenic." On the third occasion the residence was treated, different pesticides containing the chemical pyrethrin were used. When these latter pesticides were applied inside the residence the decedent began to show symptoms of bronchial asthma. The symptoms worsened until he reached a comatose state. He was transported to a nearby hospital where he died after a short time. The cause of death was inhalation of the pesticides resulting in a bronchial asthma attack. It was alleged that Dettelbach manufactured the pesticides containing pyrethrin and this chemical was the death causing agent. Recovery for strict liability was sought under Code Ann. § 105-106 (OCGA § 51-1-11) due to the failure of Dettelbach to adequately warn of the danger of pyrethrin to one suffering bronchial asthma.

1. The Court of Appeals' opinion concludes summary judgment against the strict liability theory was properly granted because no cause of action exists in strict liability for failure to warn of the danger of a product, although the court recognized such a cause of action exists for a defect in the manufacture of a product. In other words, the court distinguished between (1) packaging, labeling and giving warnings, and (2) the actual making of the product. This case turns on the meaning to be given the words "defectively manufactured" used in the amendment to Code Ann. § 105-1301 (OCGA § 51-4-1 (2)) found in Ga. Laws 1978, pp. 2218, 2219. The Court of Appeals' opinion was based on the plain words of the statute supported by its view of the legislative history. To understand the basis of this conclusion and the contrary one we reach, some background is necessary.

In 1968 the legislature amended Code Ann. § 105-106 (OCGA § 51-1-11) dealing with privity necessary to support an action. The amendment provided: "[T]he manufacturer of any personal property sold as new property, either directly or through a dealer or any other person, shall be liable in tort, irrespective of privity, to any natural person who may use, consume or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended and its condition when sold is the proximate cause of the injury sustained; a manufacturer may not exclude or limit the operation hereof." Ga. Laws 1968, p. 1167.

The amendment imposed a "degree of strict liability on manufacturers." *Ellis v. Rich's*, 233 Ga. 573, 577 (212 SE2d 373) (1975). A product that is "not merchantable and reasonably suited to the use intended" is "defective." *Center Chemical Co. v. Parzini*, 234 Ga. 868 (218 SE2d 580) (1975).

The issues which ultimately led to the matters we now address came to light in *Ford Motor Co. v. Carter*, 239 Ga. 657 (238 SE2d 361) (1977). That was an action for wrongful death based on strict

liability. The complaint alleged the wrongful death resulted in part from a defect in a 1968 Ford F-100 pickup truck, giving rise to liability under Code Ann. § 105-106 (OCGA § 51-1-11, the product liability or strict liability statute). But, the issue before the court was resolved under the wrongful death statute, Code Ann. § 105-1301[1] (OCGA § 51-4-1). It was observed that the wrongful death statute limited by definition of the word "homicide" the conduct which could give rise to a wrongful death action. Death of a human being must have resulted from (1) a crime, (2) criminal negligence or (3) other negligence. Since strict liability was not a crime or criminal negligence or other negligence it could not be a basis for recovery for wrongful death. The 1978 legislature was fully aware of the decision in *Carter*, supra, handed down September 7, 1977. A Senate Product Liability Committee was formed in 1977 to study the area of product liability and directed to report its findings and recommendations, with suggestions for proposed legislation, to the 1978 session of the General Assembly. S.R. 136 (1977). The committee noted in its report that *Carter* held there was no cause of action for wrongful death under strict liability. In the words used in the report: "The Committee believes fairness and equity place a responsibility upon a manufacturer to be held liable for a death *to the same extent he is held liable for injury to person or property under Ga. Code 105-106*. There appears to be an illogical presumption that a scratch inflicted on a person can be a cause of action, but a person's death cannot." (Emphasis supplied.) Report of the Senate Product Liability Study Committee, Jan. 1978, p. 22.

The report recommended that Ga. Code Ann. § 105-106 (product liability) be amended to include wrongful death as a cause of action under the theory of strict liability. The suggested change was made by the General Assembly in 1978 except that Code Ann. § 105-1301 (wrongful death) was amended to accomplish the change rather than the product liability statute. Ga. Laws 1978, pp. 2218, 2219.[2] The

---

[1] "The word 'homicide' as used in this Chapter shall include all cases where the death of a human being results from a crime or from criminal or other negligence."

[2] During the 1978 session of the General Assembly three bills were passed into law, two from the Senate and one from the House. All three related to strict liability and Code Ann. § 105-106. The lowest numbered Act, No. 1464, was Senate Bill 511. It was approved April 10, 1978 and appears as the first of the three Acts in Ga. Laws 1978, p. 2202. The purpose of this Act was to provide that alteration of a product from its condition when sold is an affirmative defense. The Act accomplished this by striking Code Ann. § 105-106 in its entirety and substituting a new § 105-106 restructured into subparts (a) and (b). The only material change however was to provide for the affirmative defense.

The second Act in the sequence of three was No. 1471, House Bill 1327, which appears in Ga. Laws 1978, p. 2218. It too was approved April 10, 1978. This Act amended both Code Ann. § 105-106 (by striking the old section and substituting a new one) and Code Ann. § 105-1301 (by adding additional language to the old section). The purpose was to provide for strict

method was to add a fourth element to the three types of conduct upon which a wrongful death action lies. That element was, "defectively manufactured property whether or not the result of negligence."[3] If a defectively manufactured product includes one in which there is a failure to give adequate warning of a known danger, Stiltjes' claim under strict liability was not subject to summary judgment. We hold that to be the case.

Dettelbach contends the Court of Appeals' view that "manufacture" does not include packaging, labeling and warning is correct. For the reasons given in the Court of Appeals' opinion, that is a plausible argument. On the other hand it can also be plausibly argued that "manufacture" includes packaging, labeling and giving a warning. Manufacture means "[t]o make or process (a raw material) into a finished product. . . ." The American Heritage Dictionary of the English Language, Houghton & Miffin. The words "finished product" indicate that packaging, labeling and warning are included. The Senate committee report is a strong indication that the legislative intention was to hold a manufacturer strictly liable for wrongful death to the same extent as he is strictly liable for injury to person or property. That includes a failure to give adequate warning of a known danger. *Center Chemical Co. v. Parzini,* supra.

We, therefore, construe OCGA § 51-4-1 (2) to make one liable for

---

liability where death occurs. This was accomplished by striking § 105-106 and substituting a new section giving a cause of action for wrongful death. The restructured format for § 105-106 used in Senate Bill 511 was not followed. Rather, § 105-106 as it appears in Ga. Laws 1968, pp. 1166, 1167, was tracked except that an action for wrongful death was incorporated. Nonetheless this struck down § 105-106 as amended by Senate Bill 511. Section 105-1301 was amended by adding "or from defectively manufactured property whether or not the result of negligence" to the already existing three grounds for wrongful death: crime, criminal negligence or other negligence.

The third Act in the sequence was No. 1485 representing Senate Bill 512, which appears at Ga. Laws 1978, p. 2267. It was approved on April 11, 1978, the day following the first two. Its purpose was to require that strict liability actions against manufacturers be instituted within ten years from the date of the first sale for use or consumption of a product. This was again accomplished by striking § 105-106 in its entirety. There is no reference to either Senate Bill 511 nor to House Bill 1327. Both the changes to § 105-106 provided in Senate Bill 511 (alteration is an affirmative defense) and in House Bill 1327 (cause of action for wrongful death and strict liability) are omitted. However, the change in § 105-1301 (cause of action for wrongful death for defectively manufactured products) wrought by House Bill 1327 was left intact.

Nothing ascertainable from the history of the three bills as they passed the General Assembly indicates that they were ever compared or considered collectively. Georgia Senate Journal, Regular Session 1978; Georgia House Journal, Regular Session 1978. For another analysis of these three bills see Eldridge, Wrongful Death Actions — The Law in Georgia, § 12-3 (1985 Supp.).

[3] As amended Code Ann. § 105-1301 then read: " 'Homicide' defined. — The word 'homicide' as used in this Chapter shall include all cases where the death of a human being results from a crime or from criminal or other negligence or from defectively manufactured property whether or not the result of negligence."

wrongful death under the strict liability provisions existing in OCGA § 51-1-11 to the same extent the latter Code section makes one liable for injury to person or property.

2. The Court of Appeals based its judgment on a second ground, in addition to that discussed in Division 1 above. There, the court held the manufacturer, Dettelbach, could not be held liable to Stiltjes because its product was not sold directly to Stiltjes, but to Ridco, a professionally licensed pest control operator charged with knowledge of the danger involved. We did not grant certiorari as to this second ground and do not reach it here. It is sufficient, if correctly decided, to support the judgment of the Court of Appeals. Therefore, we affirm the judgment of the Court of Appeals.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 3, 1986.

*Lefkoff, Duncan, Grimes & Dermer, John R. Grimes, Kimberly A. Richardson,* for appellant.

*Michael J. Gorby, Decker, Cooper & Hallman, Richard P. Decker, Deborah L. Taylor, Drew, Eckl & Farnham, Stevan A. Miller, Green, Buckley, DeRieux & Jones, Burt DeRieux, Joseph W. Bryan, Cathleen M. Devlin,* for appellees.