Laura Jeanne JONES, William Leonard Jones, Plaintiffs-Appellants,

v.

NORDICTRACK, INC., Nordictrack Fitness at Home, Defendants-Appellees.

No. 98-9169.

United States Court of Appeals,

Eleventh Circuit.

Dec. 26, 2000.

Appeal from the United States District Court for the Northern District of Georgia. (No. 97-03266-1-CV-MHS), Marvin H. Shoob, Judge.

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

In this product liability action, Plaintiffs-Appellants Laura and William Jones appeal the district court's grant of a motion for judgment on the pleadings in favor of NordicTrack, Inc. and NordicTrack Fitness at Home ("NordicTrack"). The district court granted the motion because Laura Jones was not using the NordicTrack when she was injured, and therefore, the court held, NordicTrack could not be liable for her injuries. We CERTIFY THE QUESTION to the Supreme Court of Georgia.

## I. BACKGROUND

The Joneses brought a product liability suit against NordicTrack after Laura Jones tripped and fell against the NordicTrack "Achiever" in their recreation room. The blunt chrome leg penetrated into the rear of Laura Jones's right thigh and buttock, severing two veins in her thigh and damaging an artery and a nerve in her leg. The Joneses sued on grounds of strict liability, negligence, failure to warn, and loss of consortium.

NordicTrack filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that use of a product is a predicate to liability under Georgia law. Therefore, they argued, NordicTrack is not liable for Laura Jones's injuries because she was not using the NordicTrack when she was injured. The Joneses responded that NordicTrack was liable because the risk of an exposed steel leg outweighs the benefits of that particular design. The district court granted the motion for judgment on the pleadings because the product was not in use at the time of the accident. The Joneses appealed.

## II. DISCUSSION

Judgment on the pleadings is appropriate when no issues of material fact are raised in the pleadings and the movant is entitled to judgment as a matter of law. *Ortega v. Christian,* 85 F.3d 1521, 1524 (11th

Cir.1996). We review a judgment on the pleadings *de novo. Id* at 1524-25. In so reviewing, we accept the facts in the light most favorable to the nonmoving party. *Id.*

A.    *Georgia Law Unclear*

The parties disagree on whether a product must be in use for the manufacturer to be liable for injury caused by that product. We certify this question pursuant to Rule 46 of the Supreme Court of Georgia because "there are ... questions or propositions of the laws of this State which are determinative of said cause and there are no clear controlling precedents in the appellate court decisions of this State." *Id.* The question of whether the NordicTrack had to be in use for NordicTrack to be liable for Laura Jones's injuries is determinative of the outcome of this case, as evidenced by the district court's judgment on the pleadings on that basis. The district court concluded that Georgia law requires a product to be in use at the time of injury in order for a manufacturer to be held liable for a design defect. However, although each of the cases and statutes cited in the district court's opinion can be read in the manner described by the district court, we disagree that the specific question of use has been addressed by the courts or the legislature.

The district court cites Official Code of Georgia § 51-1-11(b)(1) for the conclusion that a product has to be in use for a manufacturer to be liable for injury. The district court correctly cites that a manufacturer is liable when the product is, "not merchantable and reasonably suited to the use intended." O.C.G.A. § 51-1-11(b)(1). However, the same section grants the right to bring action under this section to "any natural person who may use, consume, or reasonably be affected by the property." *Id.* Therefore, it is not clear that the Georgia Code requires a person to be using a product in order for the manufacturer to be liable for injury caused by that product.

The district court also cites *Friend v. General Motors Corp.,* 118 Ga.App. 763, 165 S.E.2d 734 (1968) in support of its conclusion. *Friend* defines "use" to mean that a product has to be safe for both, "the purposes for which it is intended, and for other uses which are foreseeably probable." *Id.* at 736. However, *Friend* does not answer the specific question of whether a product must be in use for the manufacturer to be held liable for an injury proximately caused by the product.[1]

Finally, the district court relies on *Hatch v. Ford Motor Co.,* 163 Cal.App.2d 393, 329 P.2d 605

---

[1]The Joneses also argue that one of the foreseeable uses of the NordicTrack is to have it left out in a home exercise room, as it is too bulky to put away after each use. Whether this is an acceptable "use" under Georgia law is secondary to whether use is required for liability. Therefore, this argument is postponed until the Supreme Court of Georgia acts on this certification.

(1958). In *Hatch,* the California appellate court held that the manufacturer had no duty "to render a vehicle safe to collide with rather than simply a duty to so manufacture it as to make it safe for the use for which it is intended." *Id.* at 607. While *Hatch* clearly supports the district court's ruling, it has not been cited by Georgia courts for the proposition at issue in this case.[2] Also, the ruling has since been called into doubt in California. *See, e.g., Knippen v. Ford Motor Co.,* 546 F.2d 993, 1001 (D.C.Cir.1976) ("Both *Hatch* and *Kahn* were decided before their respective jurisdictions adopted the *Larsen* rule."); *Cronin v. J.B.E. Olson Corp.,* 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153, 1157 (1972) ("Although a collision may not be the 'normal' or intended use of a motor vehicle, vehicle manufacturers must take accidents into consideration as reasonably foreseeable occurrences involving their products.") (citing *Larsen v. General Motors Corp.,* 391 F.2d 495, 501-03 (8th Cir.1968)). Therefore, we turn to the Supreme Court of Georgia to decide whether to adopt the logic of *Hatch* or frame a different standard.

The Joneses argue that the risk-utility analysis adopted in *Banks v. ICI Americas,* 264 Ga. 732, 450 S.E.2d 671 (1994) (*vacated on other grounds*) controls this case. In *Banks,* the Supreme Court of Georgia overruled past cases and decided that Georgia would apply a risk-utility analysis when deciding whether a design defect case would be heard by a jury, as is the custom in the majority of the states and treatises they surveyed. *Id.* at 673. However, there is no discussion in *Banks* on whether the product has to be in use for the risk-utility analysis to apply and, because the case was remanded, the court did not consider the question of whether the rat poison was "in use" when the child drank it.[3] *Id.* at 675.

By deciding to certify this question to the Supreme Court of Georgia, we are not questioning the district court's interpretation of Georgia law. Rather, we are asking the Georgia court to clarify an aspect of the product liability law that is subject to several interpretations. Because the statutory language is ambiguous and the only case to directly address this question comes from a California court, we are asking the Supreme Court of Georgia to rule on this question.

---

[2]The only time a Georgia court has cited *Hatch* is in *Long Manufacturing N. C., Inc. v. Grady Tractor Co.,* 140 Ga.App. 320, 231 S.E.2d 105, 107 (1976). However, *Hatch* was cited for a different proposition and the court expressed disagreement with the reasoning in *Hatch.*

[3]Both parties also cite to *Ogletree v. Navistar Intl. Transp. Corp.,* 500 S.E.2d 570, 269 Ga. 443 (Ga.1998) ("*Ogletree V*") and *Ogletree v. Navistar Intl. Transp. Corp.,* 522 S.E.2d 467, 271 Ga. 644 (Ga.1999) ("*Ogletree VII*") to support their arguments. In the *Ogletree* cases, the Supreme Court of Georgia further explained the risk-utility analysis appropriate in design defect cases, but did not address the question of whether the product had to be in use for this analysis to apply. The fact that the product was in use at the time of injury in *Ogletree* is not sufficient for us to interpret the Supreme Court to be requiring use of the product, since this question was not addressed in the opinions.

B.    *Certification*

Georgia law requires that we define the specific question to be certified to the Supreme Court.  *See*

Ga. R.S.Ct. 47 ("The Court certifying to this Court a question of law shall formulate the question and cause

the question to be certified and transmitted to this Court.").  Accordingly, we issue the following certification:

> CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO RULE 46 OF THE SUPREME COURT RULES OF GEORGIA.
>
> TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE JUSTICES:

It appears to the United States Court of Appeals for the Eleventh Circuit that this case involves a question of

Georgia state law that is determinative of the cause, but unanswered by controlling precedent of the Supreme

Court of Georgia or any Georgia Court of Appeals.  We therefore certify this question for resolution by the

highest court of Georgia:

> MUST A PRODUCT BE IN USE AT THE TIME OF INJURY FOR A DEFENDANT TO BE HELD LIABLE FOR DEFECTIVE DESIGN UNDER THEORIES OF STRICT LIABILITY, NEGLIGENCE, OR FAILURE TO WARN?[4]

### III. CONCLUSION

Because the question of whether a product has to be in use at the time of injury for a manufacturer

to be liable for that injury is unsettled in Georgia law, we are asking the Supreme Court of Georgia to answer

that question before this appeal is addressed on the merits.  Accordingly, the QUESTION IS CERTIFIED.

---

[4]The phrasing of this certified question is not intended to limit the Supreme Court of Georgia's consideration of the various issues posed by this case.  The entire record and the briefs of the parties shall be transmitted to the Supreme Court of Georgia to assist in its determination, should it accept our certification.