## S15G1903. CERTAINTEED CORPORATION v. FLETCHER.
(794 SE2d 641)

HUNSTEIN, Justice.

Appellee Marcella Fletcher was diagnosed with malignant pleural mesothelioma, which she attributed to years of laundering her father's asbestos-dust-covered work clothing, and she sued Appellant CertainTeed Corporation, who manufactured the asbestos-laden water pipes with which her father had worked. In her complaint, she alleged, inter alia, negligent design and negligent failure to warn. Before the completion of discovery, the trial court granted Certain-Teed's motion for summary judgment, and Fletcher appealed.

A majority of the Court of Appeals reversed the grant of summary judgment, concluding that CertainTeed had failed to demonstrate, as a matter of law, the absence of evidence that its product was defectively designed.[1] The Court of Appeals also found that a jury question existed as to whether CertainTeed had a duty to warn Fletcher of the risks associated with inhaling asbestos dust. See *Fletcher v. Water Applications Distribution Group, Inc.*, 333 Ga. App. 693 (773 SE2d 859) (2015). We granted certiorari to review the decision of the Court of Appeals. While we conclude that CertainTeed owed no duty to warn Fletcher of the possible hazards of asbestos dust from its products, the Court of Appeals correctly reversed the trial court's judgment

---

[1] CertainTeed did not challenge this conclusion in either its petition for certiorari or in its briefs on appeal; therefore, we do not address whether issues of proof may or may not entitle CertainTeed to summary judgment.

with respect to Fletcher's defective design claim. Consequently, we affirm the judgment of the Court of Appeals in part and reverse in part.

1. Below, the Court of Appeals held that Fletcher's design-defect claim was governed by the risk-utility test adopted by this Court in *Banks v. ICI Americas, Inc.*, 264 Ga. 732 (450 SE2d 671) (1994), and not this Court's recent decision in *CSX Transp. v. Williams*, 278 Ga. 888 (608 SE2d 208) (2005), wherein we held that an employer's duty to provide a safe workplace does not extend to third party nonemployees who come into contact with asbestos-tainted work clothing. *Fletcher*, 333 Ga. App. at 699. The Court of Appeals was correct.

This Court in *CSX Transp.* addressed the duty owed by an employer to a third party nonemployee with respect to asbestos-tainted work clothing in the unique context of the employer-employee relationship. This case, however, presents an entirely different question. Fletcher claims, inter alia, that CertainTeed, as a manufacturer, negligently designed its asbestos-laden products. In such a case, "the risk-utility analysis applies to determine whether the manufacturer is liable." *Ogletree v. Navistar Intl. Transp. Corp.*, 271 Ga. 644, 645 (522 SE2d 467) (1999).

> This risk-utility analysis incorporates the concept of "reasonableness," i.e., whether the manufacturer acted reasonably in choosing a particular *product design*, given the probability and seriousness of the risk posed by the design, the usefulness of the product in that condition, and the burden on the manufacturer to take the necessary steps to eliminate the risk.

(Emphasis supplied.) *Banks*, 264 Ga. at 734 (1). "[I]n determining whether a product was defectively designed, the trier of fact may consider evidence establishing that at the time the product was manufactured, an alternative design would have made the product safer than the original design and was a marketable reality and technologically feasible." Id. at 736 (1). Other factors that this Court has recognized may be relevant to discerning a design defect include the following:

> the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the

art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance.

Id. at 736 (1), n. 6. As this Court explained in *Jones v. Nordictrack, Inc.*, 274 Ga. 115 (550 SE2d 101) (2001),

> [t]he "heart" of a design defect case is the reasonableness of selecting from among alternative product designs and adopting the safest feasible one. *Banks v. ICI Americas*, supra at 736 (1). Consequently, the appropriate analysis does not depend on the use of the product, as that may be narrowly or broadly defined, but rather includes the consideration of whether the defendant failed to adopt a reasonable alternative *design* which would have reduced the foreseeable risks of harm presented by the *product*.

274 Ga. at 118. Accord *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1) (450 SE2d 208) (1994) ("[A] manufacturer has a duty to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses."). With "the adoption of the risk-utility analysis in this state . . . the burden [is on] a defendant, in seeking a judgment as a matter of law, to show plainly and indisputably an absence of any evidence that a product as designed is defective." *Ogletree*, 271 Ga. at 646.

As the Court of Appeals correctly recognized, it is the risk-utility analysis announced in *Banks* — and not *CSX Transp.* — that is controlling here. Further, in light of the unchallenged conclusion reached by the Court of Appeals — that "CertainTeed failed to carry its burden of showing plainly and indisputedly an absence of any evidence that its product as designed was defective under the risk-utility analysis," *Fletcher*, 333 Ga. App. at 699 — the reversal of the grant of summary judgment was correct.

2. We must next determine whether the Court of Appeals correctly concluded that CertainTeed owed a duty to Fletcher to warn her regarding the dangers of asbestos dust that allegedly covered her father's work clothing. In this instance, we disagree with the Court of Appeals' conclusion.[2]

---

[2] Design defect and failure to warn claims are not necessarily coextensive. *Chrysler Corp.*, 264 Ga. at 724.

"In failure to warn cases, the duty to warn arises whenever the manufacturer knows or reasonably should know of the danger arising from the use of its product." *Chrysler Corp.*, 264 Ga. at 724. That duty requires warnings of "nonobvious foreseeable dangers from the normal use of its products." (Citations omitted.) *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F3d 284, 289 (III) (b) (11th Cir. 1994) (applying Georgia law). The duty to warn may be owed to consumers, see *DeLoach v. Rovema Corp.*, 241 Ga. App. 802, 804 (527 SE2d 882) (2000); reasonably foreseeable users, see *Chrysler Corp.*, 264 Ga. at 724; and, purchasers of the product, see *Vickery v. Waste Mgmt. of Ga.*, 249 Ga. App. 659, 661 (2) (549 SE2d 482) (2001). This duty has been extended, in some cases, to reasonably foreseeable third parties. See *R & R Insulation Svcs., Inc. v. Royal Indem. Co.*, 307 Ga. App. 419, 427 (3) (705 SE2d 223) (2010). The existence of a duty to warn, the determination of which is a legal question, see *Rasnick v. Krishna Hospitality, Inc.*, 289 Ga. 565 (713 SE2d 835) (2011), is not resolved exclusively on the basis of foreseeability. *CSX Transp.*, 278 Ga. at 890 (citing *City of Douglasville v. Queen*, 270 Ga. 770 (514 SE2d 195) (1999)). See also *Badische Corp. v. Caylor*, 257 Ga. 131 (356 SE2d 198) (1987). " '[I]n fixing the bounds of duty, not only logic and science, but [public] policy play an important role.' " (Citation omitted.) *CSX Transp.*, 278 Ga. at 890. "To impose a duty that either cannot feasibly be implemented or, even if implemented, would have no practical effect would be poor public policy indeed." *Ga. Pacific, LLC v. Farrar*, 69 A3d 1028, 1039 (Md. Ct. App. 2013).

While the Court of Appeals recognized below that Fletcher would not have seen any warning label placed on CertainTeed's products, it nevertheless concluded that a warning could have permitted her father to take steps to mitigate any danger posed by the asbestos dust on his clothing. *Fletcher*, 333 Ga. App. at 700. This conclusion is problematic. The duty as envisioned by the Court of Appeals is specifically crafted based on the unique facts present here, without consideration for its broader application. We are disinclined to conclude that CertainTeed owed a duty to warn third parties based on the fact that, in *this* case, such a warning *may* have been effective. Indeed, under the theory developed below, the warning aimed at protecting third parties would not have been systematically distributed or available to the individuals to which it was targeted; instead, the onus would have been on the *worker* to keep those third parties safe. It is not difficult to envision that, while some workers might have taken steps to protect or warn family members or other individuals with whom they came in contact, other workers might not have taken such steps.

Therefore, we think it unreasonable to impose a duty on Certain-Teed to warn all individuals in Fletcher's position, whether those individuals be family members or simply members of the public who were exposed to asbestos-laden clothing, as the mechanism and scope of such warnings would be endless. As we stated in *CSX Transp.*,

> it must also be recognized that there is a responsibility to consider the larger social consequences of the notion of duty and to correspondingly tailor that notion so that the illegal consequences of wrongs are limited to a controllable degree. The recognition of a common-law cause of action under the circumstances of this case would, in our opinion, expand traditional tort concepts beyond manageable bounds and create an almost infinite universe of potential plaintiffs. Accordingly, we decline to promulgate a policy which would extend the common law so as to bring the plaintiff within a class of people whose interests are entitled to protection from the defendant's conduct.

(Citations and punctuation omitted.) 278 Ga. at 890. Accordingly, we hold that CertainTeed owed no duty to warn Fletcher regarding the dangers of the asbestos dust and, thus, that the Court of Appeals erroneously reversed the trial court's grant of summary judgment to CertainTeed with respect to Fletcher's duty to warn claim.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Melton, J., who concurs specially, and Nahmias, J., who concurs in judgment only.*

MELTON, Justice, concurring specially.

Although I concur in Division 1 of the majority opinion, I cannot concur fully in the analysis of Division 2. As it is written, Division 2 may give the impression that this Court is deciding issues relating to the duty to warn not only Fletcher, but the duty to warn her father as well. Our analysis in this case does not and should not reach or analyze the issue of CertainTeed's duty to warn Fletcher's father or the ramifications of any failure to warn Fletcher's father. In her complaint, Fletcher premised her duty to warn claim on a duty to warn Fletcher or others similarly situated to her. Fletcher's father is not similarly situated to Fletcher, so he is not encompassed by Fletcher's duty to warn claim. Therefore, our analysis must be limited to the issues relating to the failure to warn Fletcher, not her father in this case. I also write separately to emphasize that our opinion likewise does not address whether Fletcher might have a claim as an alleged injured party resulting from the failure to warn Fletcher's father, which is different from a claim that Fletcher,

herself, should have been warned. See *Folsom v. Kawasaki Motors Corp., U.S.A.*, 509 FSupp.2d 1364, 1367 (II) (M.D. Ga. 2007) (question of fact remained whether improper warning to operator of jet ski caused injury to nearby swimmer). However, as already stated, Fletcher claimed that there was a duty to warn her and those similarly situated, not her father. Because I believe that Division 2 might cause confusion on all of these points, I must concur in judgment only as to that division.

DECIDED NOVEMBER 30, 2016 —
RECONSIDERATION DENIED DECEMBER 8, 2016.

*Hawkins, Parnell, Thackston & Young, Erin E. Shofner, David C. Marshall; Schiff Hardin, Michael K. Wolensky*, for appellant.

*Buck Law Firm, Robert C. Buck, Juliana Y. Sleeper*, for appellee.

*Shook, Hardy & Bacon, Leonard Searcy II, Mark Behrens, Cary Silverman; Bryan Cave, William V. Custer IV, Edwin M. Cook*, amici curiae.