**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**October 30, 2020**

# In the Court of Appeals of Georgia

A20A1218. MAYNARD et al. v. SNAPCHAT, INC.                DO-044

DOYLE, Presiding Judge.

Wentworth and Karen Maynard sued Snapchat, Inc., and Christal McGee to recover damages for injuries sustained in an automobile collision that allegedly resulted from McGee's use of the Speed Filter feature of Snapchat's smartphone application.[1] Following the grant of Snapchat's motion to dismiss, the Wentworths now appeal, contending that the complaint sufficiently alleges Snapchat's violation

---

[1] This is the second interlocutory appeal filed by Wentworth and Karen Maynard in their action against Snapchat, Inc., and Christal McGee. In *Maynard v. Snapchat*, we held that Snapchat was not immune from liability under the federal Communications Decency Act, 47 USC § 230. We therefore reversed the trial court's grant of Snapchat's motion to dismiss on this ground and remanded the case for further proceedings in the trial court. Upon remand, the Maynards amended their complaint, asserting a single claim against Snapchat for negligence (as well as claims against McGee) and derivative claims for loss of consortium, litigation expenses, and punitive damages.

of its duty to use reasonable care in designing the Speed Filter product. We affirm under the facts of this case because Snapchat, Inc., did not owe a duty to the plaintiffs to alter its product design to prevent the injuries allegedly caused by driver Christal McGee while she was using Snapchat's Speed Filter application.

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. The appellate court reviews de novo the trial court's ruling on the defendant[']s motion to dismiss, accepting as true all well-pled material allegations in the complaint and resolving any doubts in favor of the plaintiff[s].[2]

Similarly, the appellate court "review[s] de novo the trial court's decision on a motion for judgment on the pleadings, and . . . construe[s] the complaint in a light most favorable to the appellant[s], drawing all reasonable inferences in [their] favor."[3]

---

[2] (Citations and punctuation omitted.) *Williams v. DeKalb County*, 308 Ga. 265, 270 (2) (840 SE2d 423) (2020). See also OCGA § 9-11-12 (b) (6).

[3] (Citation and punctuation omitted.) *Reliance Equities, LLC v. Lanier 5, LLC*, 299 Ga. 891, 893 (1) (792 SE2d 680) (2016). See also OCGA § 9-11-12 (c).

The Maynards' complaint, as amended, alleges that Snapchat is a social media company that makes products allowing users to create, upload, post, send, receive, share, and store digital photos and videos. Snapchat created and distributed a feature within its application, known as the Speed Filter, that allows Snapchat users to record their speed and overlay that speed onto a Snapchat photo or video. Snapchat users can then share on social media that photo or video with their speed as a "Snap," which is Snapchat's messaging product.

The Maynards' complaint further alleges that around 10:15 p.m. one evening, McGee was driving with three passengers in her family's car. McGee began driving at an excessive rate of speed, attempting to reach 100 miles per hour so that she could capture that speed on a photograph using the Speed Filter. A passenger checked the Speed Filter on her own phone, and it registered a speed in excess of 100 miles per hour. Meanwhile, unbeknownst to McGee, Wentworth Maynard had entered the same highway some distance ahead of McGee. Due to her distraction and unsafe speed, McGee drove into the back of Maynard's vehicle, injuring everyone involved.

The Maynards sued McGee and Snapchat, seeking damages for negligence and loss of consortium, as well as litigation expenses and punitive damages. The Maynards alleged that McGee drove negligently and that Snapchat negligently

3

designed the Speed Filter, encouraging users to endanger themselves and others on the roadway. Snapchat moved to dismiss the complaint or for a judgment on the pleadings, and after a hearing, the trial court granted the motion. The trial court ruled that Snapchat "had no duty to alter the design of its mobile application to prevent McGee from driving recklessly or negligently." We granted the Maynards' application for interlocutory appeal, and this appeal followed.

The Maynards argue that Snapchat violated its duty to use reasonable care in designing the Speed Filter product. We disagree because, based on the facts of this case, the allegedly negligent design claim does not fall within Snapchat's duty of care to the plaintiffs.

> In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty. Specifically, a "legal duty" is the obligation to conform to a standard of conduct under the law for the protection of others against unreasonable risks of harm. But the innocence of the plaintiff is immaterial to the existence of the legal duty on the part of the defendant in that the plaintiff will not be entitled to recover unless the defendant did something that it should not have done, i.e., an action, or failed to do something that it should have done, i.e., an omission, pursuant to the duty owed the plaintiff under the law.

And such a duty can arise either from a valid legislative enactment, that is, by statute, or be imposed by a common law principle recognized in the case law. Nevertheless, as the Supreme Court of Georgia has recently held, there is no general legal duty to all the world not to subject others to an unreasonable risk of harm.[4]

The Maynards argue that they have sufficiently alleged a duty on the part of Snapchat to design the product differently to avoid the circumstances that caused the Maynards' injuries. The dissent agrees, relying on the risk-utility balancing test identified in *Banks v. Ici Adams*, which it correctly identifies as the test for negligence in a design defect case such as this one.[5] In that test, a trier of fact would "evaluate design defectiveness under a test balancing the risks inherent in a product design against the utility of the product so designed."[6] But the applicability of that test does

---

[4] (Footnotes and punctuation omitted.) *Graham Stanley v. Garrett*, __Ga. App. __, ___ (1) (Case No. A20A0894, decided Sept. 17, 2020), citing *Ga. Dept. of Labor v. McConnell*, 305 Ga. 812, 816 (3) (a) (828 SE2d 352) (2019) (disapproving of *Bradley Center v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693) (1982), to the extent that it created a general legal duty "to all the world not to subject [others] to an unreasonable risk of harm" (punctuation omitted)).

[5] 264 Ga. 732 (450 SE2d 671) (1994).

[6] Id. at 735 (1).

5

not obviate the requirement to identify a legal duty, which presents a legal question for the court.[7]

Here, the complaint alleges that the injury was caused by McGee's conduct of mis-using the Speed Filter while driving at an excessive rate of speed. Thus, any liability on the part of Snapchat is predicated on McGee's conduct. Under Georgia law, there is no "general legal duty to all the world not to subject others to an unreasonable risk of harm,"[8] and

> [a]s a general rule, there is no duty to control the conduct of third persons to prevent them from causing physical harm to others. . . . [T]he two exceptions to this rule are when a special relationship exists between the actor and another imposing a duty on the actor to control such person's conduct for the benefit of third persons, or a special relationship exists between the actor and another giving such person a right to protection.[9]

No such special relationship is alleged here.

---

[7] See *Rasnick v. Krishna Hospitality., Inc.*, 289 Ga. 565, 567 (713 SE2d 835) (2011) ("The existence of a legal duty is a question of law for the court.").

[8] (Punctuation omitted.) *McConnell*, 305 Ga. at 816 (3).

[9] (Footnotes and punctuation omitted.) *Graham Stanley*, __ Ga. App. at __.

Put simply, Georgia law does not impose a general duty to prevent people from committing torts while misusing a manufacturer's product. Although manufacturers have "a duty to exercise reasonable care in manufacturing its products so as to make products that are reasonably safe for intended or foreseeable uses,"[10] this duty does not extend to the intentional (not accidental) misuse of the product in a tortious way by a third party.[11] The Maynards allege that Snapchat's design contains an inherent incentive to engage in risky behavior, but they only point to the attractiveness of the product itself, not to any specific reward system or status ranking predicated on misusing it while driving or generating higher speeds.[12] Further, as pointed out by the trial court, the Speed Filter function is use-neutral; it is equally functional when used while flying in an airplane, while riding as a passenger stuck in a traffic jam, or when

---

[10] (Punctuation omitted.) *Sheffield v. Conair Corp.*, 348 Ga. App. 6, 8-9 (1) (821 SE2d 93) (2018), quoting *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1) (450 SE2d 208) (1994).

[11] Compare *Jones v. NordicTrack, Inc.*, 274 Ga. 115, 118 (550 SE2d 101) (2001) (in a case addressing an *accidental injury* caused by falling into a Nordictrack, discussing the lack of a "use" or "misuse" requirement in Georgia's product liability law).

[12] Although this case was decided on the allegations in the complaint, it is undisputed that McGee's use violated Snapchat's user agreement and product warning, which warn users against engaging in the risky conduct alleged in this suit.

misused in a dangerous way — it is up to the user to avoid dangerously misusing the application. This is because "virtually any article is capable of causing an injury when put to particular uses or misuses,"[13] and imposing a duty on Snapchat to control or avoid McGee's allegedly tortious conduct extends the imposition of a legal duty beyond that which the law should recognize. "In fixing the bounds of duty, not only logic and science, but public policy play an important role."[14]

Instead of extending such a broad duty to manufacturers, Georgia has focused its public policy in this area on the conduct of drivers. For example, in an effort to stem a recent increase in roadway deaths and rising automobile insurance premiums, the Georgia General Assembly, after forming a committee to study the issue of distracted driving, passed in 2018 a new "hands-free law" that focuses on *drivers' conduct* and prohibits them from even "[p]hysically hold[ing] or support[ing]" a smartphone while driving.[15] Despite the inherent appeal and distracting nature of

[13] *Greenway v. Peabody Intl. Corp.*, 163 Ga. App. 698, 699-700 (1) (294 SE2d 541) (1982).

[14] (Punctuation omitted.) *CertainTeed Corp. v. Fletcher*, 300 Ga. 327, 330 (2) (794 SE2d 641) (2016), quoting *CSX Transp. v. Williams*, 278 Ga. 888, 890 (608 SE2d 208) (2005).

[15] OCGA § 40-6-241 (c) (1). See Brandon M. Kopp & Caleb L. Swiney, *MOTOR VEHICLES AND TRAFFIC: Uniform Rules of the Road*, 35 Ga. St. U. L.

smartphone applications, Georgia thus far has not created a duty *on the part of manufacturers* to control third parties' use of mobile phone applications while driving.

In other jurisdictions, courts have held that cell phone manufacturers do not have a duty to prevent the misuse of applications — even in at least one case where the manufacturer understood the risk of misuse. In California, for example, the court of appeals addressed a suit against Apple, Inc., based on a negligent driver's use of Apple's FaceTime video communication application. Apple had applied for a patent for "lock-out" technology, which would prevent the use of the application while driving, noting in its patent application the increasing problem of driving while distracted by using a cell phone. The court ultimately held that Apple did not have a duty to control its users' conduct while driving, stating that "even if it were foreseeable that cell phone use by drivers would result in accidents, foreseeability is not synonymous with duty; nor is it a substitute."[16]

---

Rev. 139, 141-143 (2018); Ga. L. 2018, p. 127 (stating that the purpose of "hands free" law is, in part, "to prohibit actions which distract a driver while operating a motor vehicle; to provide for the proper and safe use of wireless telecommunications devices and stand-alone electronic devices while driving").

[16] *Modisette v. Apple Inc.*, 30 Cal. App. 5th 136, 144 (2018). We recognize that foreseeability can be implicated in a duty to warn case, see *Suzuki Motor of America,*

Likewise, with respect to enticement to engage in dangerous conduct, in a Texas case involving a crash during a mechanic's test drive of a V-8 powered Cadillac El Dorado, the plaintiff, who was hit and killed in his front yard by the out-of-control vehicle, asserted negligence on the part of General Motors Company for designing a vehicle so capable of easily exceeding safe speeds. The plaintiff alleged that GM's design was negligent and pointed to GM's marketing material that, with a wink and a nod, implicitly invited drivers to test the full potential of the vehicle's performance capability:

> You feel the surge of its 32-valve, 295-horsepower V8. As you reach 60 mph in 7.5 seconds, the Road-Sensing Suspension is actually reading every inch of the road. The feedback from the Speed-Sensitive Steering grows progressively firmer as you quickly pass 100 mph. Of course, you

_Inc. v. Johns_, 351 Ga. App. 186, 193 (2) (a) (830 SE2d 549) (2019), but there is no allegation that Snapchat failed to warn McGee of the danger of misuse, or that McGee did not appreciate the danger of misuse. Driving more than 100 miles per hour while using a cell phone is, of course, patently dangerous. Compare _Davis v. John Crane, Inc._, 353 Ga. App. 243, 248 (836 SE2d 577) (2019) ("[I]f in the normal functioning of the product as designed, such function creates a danger or peril _that is not known to the user or bystander_, then the manufacturer is liable for injuries proximately caused by such danger.") (punctuation omitted; emphasis supplied). But see _Ford Motor Co. v. Stubblefield_, 171 Ga. App. 331, 335 (2) (319 SE2d 470) (1984) ("It is true that when the use to which a product was being put at the time of injury is not that originally intended by the manufacturer, liability of the manufacturer depends initially upon the foreseeability of that particular use.").

wouldn't really do this because you're not a professionally [trained] driver on a closed track. But if you were, the full-range Traction Control assures maximum grip as you approach 150 mph.[17]

The trial court granted summary judgment to GM, and the Texas Court of Appeals affirmed on the ground that "there is no legal duty to control the actions of third parties, absent some special relationship," and GM had not created a special relationship by running the ad campaign.[18]

Although the facts of this case are tragic and compelling, they should not create a duty where the law has not already recognized one. If we were to default to the risk-utility balancing test in this case without identifying a legal duty, it would eliminate the plaintiffs' burden to assert the elements of a cognizable tort claim.[19] Accordingly, we conclude that the trial court did not err by granting Snapchat's motion to dismiss.

*Judgment affirmed. Hodges, J., concurs. McFadden, C.J., dissents.*

---

[17] (Punctuation omitted.) *Ely v. GMC*, 927 SW2d 774, 782 (Tex. App. 1996).

[18] Id. at 782.

[19] See generally *Johnson v. American Nat. Red Cross*, 276 Ga. 270, 272 (1) (578 SE2d 106) (2003) ("It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation and damages.") (citation and punctuation omitted).

A20A1218. MAYNARD et al. v. SNAPCHAT, INC.


MᴄFᴀᴅᴅᴇɴ, Chief Judge, dissenting.

I respectfully dissent. "At this time, it cannot be said that the allegations of the complaint disclose with certainty that [the Maynards] would not be entitled to relief under *any* state of provable facts asserted in support." *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014) (emphasis in original). So I would reverse.

The novelty of the technology and the circumstances at issue should not distract us. There is nothing novel about the legal questions before us. The Maynards' allegations fall squarely within the requirements for stating a claim for defective

design implicating risk-utility analysis. See *Banks v. ICI Americas*, 264 Ga. 732 (450 SE2d 671) (1994). To establish such a claim, a plaintiff must demonstrate that the defendant is the manufacturer of a product that had a design defect at the time it was sold that proximately caused the plaintiff's injury. OCGA § 51-1-11 (b) (1). See generally *Banks*, supra (setting forth the appropriate test for design-defect claims based on theories of negligence as well as strict liability). Whether a particular design is defective is determined by balancing the risks inherent in the product design against the utility of the product so designed. *Banks*, 264 Ga. at 734 (1).

The Maynards alleged that: 1) Snapchat created the Speed Filter; 2) Snapchat's design choices rendered the Speed Filter unreasonably dangerous by encouraging its users to drive at excessive speeds; and 3) Wentworth Maynard was injured in a collision as a result of Christal McGee's use of the Speed Filter, a use that was reasonably foreseeable. These allegations sufficiently gave Snapchat

> fair notice of the claim and a general indication of the type of litigation involved, so as to survive an OCGA § 9-11-12 (b) (6) motion to dismiss for failure to state a claim. We are unable to say with certainty that [the Maynards] would not be entitled to relief under any state of facts which could be proved in support of [their] general allegations.

2

*Walker v. Gowen Stores LLC*, 322 Ga. App. 376, 378 (745 SE2d 287) (2013) (citations and punctuation omitted).

So the allegations of the complaint do not disclose with certainty that the Maynards would not be entitled to relief under any state of provable facts because Snapchat owed no duty to the Maynards. Rather they set out a substantively conventional design-defect claim.

> The "heart" of a design[-]defect case is the reasonableness of selecting from among alternative product designs and adopting the safest feasible one. Consequently, the appropriate analysis does not depend on the use of the product, as that may be narrowly or broadly defined, but rather includes the consideration of whether the defendant failed to adopt a reasonable alternative design which would have reduced the foreseeable risks of harm presented by the product.

*Jones v. NordicTrack*, 274 Ga. 115, 118 (550 SE2d 101) (2001) (citations, punctuation, and footnotes omitted). Snapchat's "duty [is] to exercise reasonable care in [designing] its products so as to make products that are reasonably safe for intended or foreseeable uses[.]" *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1) (450 SE2d 208) (1994). Since the "appropriate analysis does not depend on the use of the product," but instead includes "consideration of whether the defendant failed to adopt a reasonable alternative design which would have reduced the foreseeable risks of

3

harm," *Jones*, 274 Ga. at 118, the Maynards sufficiently alleged duty. See also OCGA § 51-1-11 (b) (1) (a defendant is liable in tort for design defect "irrespective of privity"). The Maynards' allegations that Snapchat failed to adopt a reasonable design, leading to a foreseeable use or misuse of the Speed Filter, thus foreseeably causing their injuries, is sufficient to state a claim.

The majority holds that the duty to adopt a reasonable design "does not extend to the intentional (not accidental) misuse of the product in a tortious way by a third party." In so holding the majority creates new law. There is no support for it in the case cited. The majority cites — for comparison — *Jones*, supra, 274 Ga. at 118. In *Jones* our Supreme Court, answering a certified question arising out of a case in which the plaintiff had tripped over an exercise machine and contended that its design had aggravated her injuries, held: "in a products liability action for defective design the focus is not on use of the product." Id. at 115.

Contrary to the majority's new rule, the existing rule is that, "reasonably foreseeable product use *or misuse* is a factor in considering whether a manufacturer may be liable for a defective product which was a proximate cause of harm resulting from the failure to adopt a reasonable alternative design . . . to reduce the foreseeable

4

risks of harm posed by the product." *Woods v. A.R.E. Accessories*, 345 Ga. App. 887, 891 (815 SE2d 205) (2018) (emphasis added).

And application of the majority's new rule drawing a crucial distinction between negligent and intentional misuse is problematic, at least to this case. The proper characterization of Christal McGee's overall conduct is not self evident. Her misuse of the app was intentional. But the immediate proximate cause of the collision was her negligent driving.

The majority invokes public policy in support of its new rule. But the "policy of Georgia [is] derived from its statutes and judicial decisions[.]" *Pink v. A. A. A. Highway Express*, 314 U. S. 201, 206 (62 SCt 241, 86 LE 152) (1941). See also *Stills v. Johnson*, 272 Ga. 645, 656 (3) (533 SE2d 695) (2000) ("The public policy of this [s]tate is created by our Constitution, our statutes, and our judicial decisions.") (Sears, J., dissenting). And our Supreme Court has articulated the public policy of Georgia by explicitly delineating a manufacturer's duty in the context of products liability, a duty that encompasses the foreseeable misuse of the product. *Chrysler Corp.*, supra, 264 Ga. at 724 (1). The majority cites no case from our Supreme Court or this court that relieves manufacturers of that duty simply because a plaintiff's injuries resulted from a third party's intentional misuse of the product.

5

"At this time, it cannot be said that the allegations of the complaint disclose with certainty that [the Maynards] would not be entitled to relief under *any* state of provable facts asserted in support [of their complaint]." *Austin*, 294 Ga. at 775 (emphasis in original). So the trial court erred in granting Snapchat's motion, and I would reverse.